May Term
1852.

BILLINGSLEY
v.
STATE BANK
OF INDIANA.

---

## BILLINGSLEY v. THE STATE BANK OF INDIANA.

The statute which enacts that no holder of a bill of exchange shall be permitted, *at any term of the Circuit Court,* to institute more than one suit upon such bill, prohibits the institution of separate suits on such bill *at the same term,* but not at *different terms,* of the Court.

It is not material on error whether a deposition read by the plaintiff at the trial should have been suppressed or not, if the evidence was simply sufficient without it to sustain the suit.

The protest of a bill was written and signed on the day that payment was refused, but the notary did not affix his seal until several months afterwards, but before the trial of the suit against the indorser. *Held,* that the protest was completed in time.

May Term,
1852.

BILLINGSLEY
v.
STATE BANK
OF INDIANA.

*A.* being indebted to the plaintiff in a certain sum, the latter, in order to obtain payment, purchased of him, at a fair price, a bill drawn payable at a bank in *New Orleans*, and applied the proceeds, with his consent, to such payment, having reason to believe when the bill was bought that it would be paid at *New Orleans* when it should become due. *Held*, that the transaction was not a loan, but a fair purchase of a bill of exchange.

Where a verdict against a party would still have been right, although evidence offered by him and rejected had been admitted, he cannot complain of the rejection of the evidence.

The statute of 1843, which declares usurious contracts valid as to the principal debt, applies as well to loans made by the state bank as to those made by individuals.

A verdict will not be set aside on error on account of erroneous instructions given to the jury, if it is apparent from the evidence that the verdict, notwithstanding, was right.

*Saturday,*
*May 29.*

ERROR to the *Dearborn* Circuit Court.

BLACKFORD, J.—In *March*, 1850, *The State Bank of Indiana*, as indorsee of a bill of exchange for 2,000 dollars, brought an action of assumpsit against *John Billingsley*, as indorser. The declaration, which was filed at the *April* term, 1850, alleges that the bill was drawn at *Lawrenceburgh*, in this state, on the 1st of *February*, 1849, by one *Davis W. Cheek* on one *Henry Raymond*, *New Orleans;* that it was payable, four months after date, to the order of one *William V. Cheek*, at the *Mechanics' and Traders' Bank*, in *New Orleans*, and was indorsed by the payee, the defendant, and others. The declaration also alleges the due presentment of the bill, its non-payment and protest, and a due notice of the dishonor to the defendant.

There was a plea in abatement as follows: That theretofore, to-wit, at the *October* term, 1849, of the *Dearborn* Circuit Court, the plaintiff had sued one *Jacob Hays* as indorser of the same bill of exchange, in which suit the said *Hays* had obtained judgment; that the plaintiff had appealed from that judgment to the Supreme Court, where the suit was then pending.

That plea was demurred to and the demurrer sustained.

The defendant then pleaded the general issue. He

also moved the Court to suppress the deposition of one *H. B. Cenas*, but the motion was overruled. The cause was afterwards tried, and a verdict and judgment rendered for the plaintiff.

The first objection made to the judgment is, that the demurrer to the plea in abatement should have been overruled.

It is not contended but that, by the law-merchant, the holder of a bill may proceed at the same time, in separate suits, against each of the parties who may be liable, until the debt is satisfied; but the defendant supposes that this rule of the law-merchant is so changed by our statute as to authorize his plea in abatement. The statute enacts that no holder of a bill of exchange shall be permitted, *at any term of the Circuit Court*, to institute more than one suit upon any one such bill. R. S., p. 697. We think it is plain that this provision does not apply to the present case. The statute prohibits the institution of separate suits on a bill of exchange *at the same term of the Court*. But the plea before us does not allege that the suit against *Hays* was commenced at the same term with the suit against *Billingsley*. On the contrary, the plea shows that the suits were commenced at different terms— the suit against *Hays* at the *October* term, 1849, and that against *Billingsley* at the *April* term, 1850. The demurrer, therefore, was rightly sustained.

The next objection is, that the deposition of *Cenas* should have been suppressed.

*Cenas* was the notary who protested the bill of exchange. His deposition tends to show the dishonor of the bill, the certificate and notarial seal attached to the protest to be genuine, and the notices of the dishonor to have been regularly given to the drawer and indorsers.

It is not material whether this deposition should have been suppressed or not, as the evidence was amply sufficient without it to sustain the suit.

The plaintiff gave in evidence the bill of exchange, the indorsements thereon, and the protest, as described in the

declaration. The defendant objected to the protest, on the ground that the notarial seal was not affixed to it until several months after the protest had been signed; but the objection was correctly overruled. The law appears to be settled that though the bill ought to be noted for non-payment on the day of the refusal to pay, still the protest may be drawn up at any time before the trial, and antedated accordingly. Byles on Bills, 190.—Chitty on Bills, 527–'8. In the case before us, the protest was written and signed on the day the payment was refused, and the notarial seal was affixed to the protest by the notary previously to the trial. It is clear, therefore, that the objection to the protest, that it was not completed in time, was without foundation. The case of *Bailcy* v. *Dozier*, 6 Howard's Sup. Court U. S. Rep. 23, cited by the plaintiff, sustains this decision. It was also proved that the plaintiff gave due notice to the defendant of the dishonor of the bill. There was proof also that the plaintiff gave for the bill the full amount for which it was drawn, less the legal interest for the time the bill had to run, and one *per cent.* as the rate of exchange, which was admitted to be the customary rate on such bills.

This was the plaintiff's evidence; and it showed, *prima facie*, that he was entitled to recover.

The defense relied on was, that the transaction was, under the appearance of a purchase of a bill of exchange, a mere loan of money; and that the loan, on account of the one *per cent.* taken as exchange, was usurious and void.

The facts, as to this part of the case, appear to be, that *William V. Check*, the payee of the bill, had become liable to the plaintiff for a certain sum of money; that the plaintiff, in order to obtain payment of that debt, purchased the bill of said *William V. Check*, at a fair price, and applied the proceeds, with his consent, to such payment; and that the plaintiff, when the bill was purchased, had good reason to believe that the bill would be paid at *New Orleans* when it should fall due.

It appears to us, therefore, that the transaction in question was not a loan, but a fair purchase of a bill of exchange.

In the course of the trial, the defendant offered to prove the rate at which the plaintiff, when said bill was bought, was selling bills on *New Orleans* payable at sight; and also to prove that, at the same time, the plaintiff knew that the drawee, *Raymond*, lived in this state, and was not likely to have funds in *New Orleans*. This evidence was held not to be admissible. We need only remark, with regard to this evidence, that, had it been admitted, the verdict would still have been clearly right.

The Circuit Court held, in this case, that if the bank make a usurious loan to any one, the whole contract is void. We are of opinion, however, that the statute of 1843, which declares usurious contracts valid as to the principal debt, applies as well to loans made by the bank as to those made by individuals. R. S. 1843, p. 581.

The defendant objects to some instructions given to the jury. But as we have no doubt, from the evidence, but that the verdict is right, the instructions cannot affect the case.

*Per Curiam.*—The judgment is affirmed, with 6 *per cent.* damages and costs.

*A. Brower*, for the plaintiff.

*P. L. Spooner*, for the defendant.