May Term,
1856.

RISER and Others *v.* SNODDY, Administrator.

RISER
v.
SNODDY.

By the R. S. 1852, the defendant, by answering to the merits, admitted the sufficiency of the complaint.

To a petition by an administrator to sell real estate, the defendants can not set up, by answer, the invalidity of his appointment.

Section 80, p. 44, 2 R. S. 1852, applies only where the writing offered in evidence purports to have been executed by an actual party to the instrument.

Petition by an administrator against the heirs of the intestate, who were minors, to sell real estate, for the payment of notes purporting to have been executed by the intestate. *Held*, that it was incumbent upon the administrator to prove the execution of the notes.

An answer setting up the statute of limitations, need not negative the exceptions therein. They must be replied.

When a case has been fully barred by the laws of the place where the defendant resided, such bar, by the R. S. 1852, is the same defence here as though it had arisen within this state.

It is doubtful whether an executor or administrator can, by promise, take a debt of the decedent out of the statute of limitations, and whether he is not bound to plead the statute.

To a petition by an administrator to sell real estate of the intestate for the payment of debts, the heirs may plead that the debts are barred by the statute of limitations, or use any other lawful plea in defence.

Where the statute of limitations is pleaded, if the plaintiff relies on a new promise to take the case out of the statute, it is incumbent upon him to show it.

*Wednesday,*
*May 28.*

APPEAL from the *Marion* Court of Common Pleas.

PERKINS, J.—*Snoddy*, as the administrator of *George Riser*, deceased, filed his application, in *August*, 1853, in the *Marion* Common Pleas, for the sale of real estate to pay debts. The debts to be paid were evidenced by sealed notes, dated *July* 15, 1839, and due *July* 15, 1841.

The heirs appeared and answered.

1. They denied the existence of the indebtedness alleged in the petition.

2. They allege that the deceased was, and for twenty years had been, a resident citizen of the state of *Maryland;* that he executed the notes in question there; that in *January*, 1853, he died there; that his personal estate was there, and there being administered upon; and that, by the law of *Maryland*, a copy of which was filed, suits upon simple contracts were barred in three years, and upon specialties, in twelve.

3. They denied the validity of *Snoddy's* appointment as administrator.

The plaintiff replied, demurring to all the paragraphs of the answer but the first. The Court sustained the demurrer.

The notes were all the evidence that was introduced. The Court decreed a sale, &c.

The appellants, the heirs, submit in this Court—

1. That the complaint, or petition to sell, is insufficient.

2. That the appointment of the administrator in this state was invalid.

3. That the evidence was insufficient to justify the decree of the Court; and that the notes were inadmissible in evidence without proof of their execution.

4. That the Court erred in sustaining the demurrer to the paragraph in the answer setting up the *Maryland* statute of limitations.

This cause was tried before the acts of 1855 came into force. Hence it was governed by the code of 1852, and the sufficiency of the complaint was admitted by answering to the merits.

The appointment of the administrator could not be impeached collaterally. A revocation of his letters should have been obtained. *Ray* v. *Doughty*, 4 Blackf. 115.

As to the admissibility of the notes in evidence, we have this statute:

" When a writing, purporting to have been executed by one of the parties, is the foundation of, or referred to in any pleading, it may be read in evidence on the trial of the cause against such party, without proving its execution, unless its execution be denied," &c., under oath. 2 R. S., p. 44, s. 80.

This suit was not against a party to the notes; nor were they read in evidence "against such party."

The case, therefore, is not within the language of the statute. Is it embraced by its spirit? We think not. The maker of an instrument would know it, and if one were presented with his signature which he did not make, he would know it. Hence, it is reasonable to require him to

deny instruments signed with his signature, under oath, if at all. Not so as to his heirs, or others not purporting to be makers of the instruments. Heirs involved in suits like the present, are generally, as in this case, minors, who are incapable of making even an admission, and against whom proof on all points is always required. They could not be expected to know, in all cases, the genuineness of a parent's signature, and be prepared to admit or deny it, in every given instance; and it would be unreasonable to require them so to do.

This case, then, not falling within the statute quoted, was to be governed by the rules of the common law, which required proof of the execution of the notes.

It should be observed that their admission was objected to at the time, for the cause above assigned.

The notes being improperly admitted, and being all the evidence, of course there was nothing upon which to base the decree rendered.

It remains to consider the question of the statute of limitations.

The demurrer admits the existence of the *Maryland* statute. Counsel for the appellees suggest, indeed, that the paragraph in the answer setting it up is bad, because it does not negative the exceptions in the statute. But the law is uniform, that exceptions in the statute of limitations must be replied. Chit. on Cont. 840.—1 Chit. Pl. 583.—Ang. on Limitations 375.

By the statute of *Maryland*, then, the domicil of the deceased maker of the notes, suits upon the notes were barred. The provision in our statute is as follows:

" When a case has been fully barred by the laws of the place where the defendant resided, such bar shall be the same defence here, as though it had arisen within this state." 2 R. S. 1852, p. 77, s. 216.

This would seem to be sufficiently explicit to put an end to controversy. But counsel say—" We object to the plea, because the question it raises was a question between the administrator and creditors, and not one between him and the heirs. These heirs have nothing to do

with it.  Nor are creditors called on to make their claims
good as against the objections of heirs.  The administra-
tor must be presumed to know better than the heirs do
about the validity of claims filed against the estate.  He
is presumed to act honestly.  The answer sets up no
charge of dishonesty against him—no collusion with credi-
tors.  If, by his admission or other acts, he injures the
heirs, their only remedy is on his bond.  He had power by
a promise to take these cases out of the statute of limita-
tions.  Who knows but he did so? who knows but the
deceased did so in his lifetime?  It is not to be tolerated
that, in a proceeding like this, in which the creditors are
not parties, they shall be affected, and their claims de-
feated by a plea of the heirs.  The like is, we believe,
unheard of in *Indiana*."

In reply, it may be observed, that the object of this suit
is to sell the land of heirs; and that it seems but reason-
able that they should be permitted to resist such suit and
save their land, if legally possible.  Further, our statute
requires, in such case, that the heirs shall be called into
Court before any decree can be rendered against them or
their inheritance.  Why called, if not to resist?  And if
to resist, why shall they not be permitted to avail them-
selves of the rules of pleading, practice, and evidence,
necessary for the purpose?

It is also doubtful whether the executor or administrator
of an estate can, by promise, take a debt out of the stat-
ute; and whether he is not bound to plead the statute
of limitations in all cases.  See *Thompson* v. *Peter*, 12
Wheat. 565.—*Peck* v. *Botsford*, 7 Conn. 172.—Ang. on
Lim. 348, *et seq.*, and cases cited in note on page 351.—2
*Kent's* Comm. (last edition) 415, *et seq.*, and notes.  But
we are not called upon in this case to go beyond that of
*Mooers* v. *White*, 6 John. Ch. Rep. 360, where Chancellor
*Kent* says:

"The executor possesses the personal estate as trustee,
and the heir the real estate as owner; and is he to be
charged, at the mere pleasure of the executor, with the

May Term,
1856.

RISER
v.
SNODDY.

debts of his ancestor? Does it rest entirely in the discretion of the executor, whether the heir is or is not to be permitted to use the statute of limitations, which the law has provided as a means of defence against a simple contract demand, which, perhaps, he knows to be unjust, though his ancestor has not left him the requisite proof? I can not bring my mind to assent to so unreasonable a proposition, nor to admit that the heir is not entitled, as against the creditor seeking to charge his estate, to use every lawful plea, unaffected by the act or admission of the executor." And see *Jennings* v. *Kee*, 5 Ind. R. 257.

In the present case, the creditors, through the administrator, are seeking to charge the real estate of the heirs, and we think the latter are entitled to use every lawful plea in defence. The administrator may give notice to the creditors of the defences set up, and the evidence required, and thus avoid any risk of liability to those creditors on account of negligence in prosecuting suit.

It may also be properly remarked, in conclusion, that it does not appear that the deceased, or the administrator, ever made any promise which could be claimed to have taken the notes involved out of the statute of limitations. If such promise had been made, and was of any importance in the case, it should have been shown on the part of the plaintiff.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded for a new trial, with leave to the parties to amend their pleadings.

*L. Barbour* and *A. G. Porter*, for the appellants.

*D. McDonald* and *W. Henderson*, for the appellee.