WRIGHT and Another *v.* HUGHES.

Suit upon a promissory note. One of the defendants, as treasurer of *The Logansport Insurance Company,* had drawn certain orders upon the company, in the similitude of bank notes, and intended for circulation as such, which were accepted by the secretary of the company. The following is a sample: "*Logansport Insurance Company:* Pay one dollar on demand to the bearer. *Logansport, May* 1, 1850." The orders were circulated as money. The treasurer requested the plaintiff to redeem the orders, and promised to pay him the amount he might redeem. But when the plaintiff had redeemed orders to the amount of 800 dollars, the treasurer, not being prepared to pay, gave the note in suit. General verdict for the plaintiff, together with the following answers: "Question—'Was said note given at the date thereof, for and in consideration of the surrender, by the plaintiff to the defendant, of 800 dollars, the amount of the issues or circulation of the *Logansport Insurance Company?*' Answer—'Yes.' Question—'Was the issue of the currency of the *Logansport Insurance Company* fraudulent and void?' Answer—'Yes.' Question—'Did the plaintiff redeem and take up 800 dollars of the issues or circulation of said company, at the request of the defendant, and upon his promise to reimburse the plaintiff?' Answer—'Yes.'"

*Held,* 1. That the special findings are consistent with the general verdict, and the judgment right upon the facts stated, if the plaintiff could recover at all.

2. That the consideration of the note was legal, and the plaintiff was entitled to recover.

APPEAL from the *Cass* Court of Common Pleas.

WORDEN, J.—Suit by the appellee against the appellants on a note for 800 dollars. Trial; verdict and judgment for the plaintiff, over a motion, by defendants, for a new trial.

Two points, only, are made by counsel for appellants, for the reversal of the judgment, viz.:

*First.* That the consideration of the note was illegal; and

*Second.* That the verdict was insufficient to warrant the judgment.

It appears by the evidence, that the appellant, *William L. Brown*, was the treasurer of the *Logansport Insurance Company*, and the principal manager of its affairs. He had drawn sundry orders upon the company for one, two, and five dollars, which orders had been accepted by the secretary of the company. The following is a sample of the orders, viz.:

"*Logansport Insurance Company*, pay one dollar on demand to the bearer. *Logansport, May* 1, 1850.

"Capital, $100,000.                    *W. L. Brown.*

"Accepted,              *D. M. Dunn*, Secretary."

These orders were in circulation as money.

Before the making of the note sued on, *Brown* had requested the plaintiff below to redeem said orders, and promised to pay him whatever amount he should redeem. The plaintiff, who had no connection with the insurance company, upon the promise of said *Brown* to reimburse him, redeemed and took up the aforesaid orders to the amount of 800 dollars, and brought them to *Brown*, who, not being then prepared to pay the amount, gave the note in question, with *Wright* as surety.

The jury found a general verdict for the plaintiff, and also returned answers to numerous questions of fact propounded to them, and amongst others, the following:

"Question 1—Was said note given, at the date thereof, for and in consideration of the surrender, by the plaintiff to the defendant, *Brown*, of 800 dollars, the amount of the issues or circulation of the *Logansport Insurance Company?*

"Answer—Yes."

"Question 19—Was the issue of the currency of the *Logansport Insurance Company* fraudulent and void?

"Answer—Yes."

The appellants insist that the answers thus given, show such a state of facts as will not warrant a recovery, and

being inconsistent with the general verdict, that the judgment is erroneous. The jury, however, answered another interrogatory in such a manner as to materially modify and explain the answer first above given, as follows:

"Question 5—Did the plaintiff redeem and take up 800 dollars of the issues or circulation of said company at the request of the defendant, *Brown*, and upon his promise to reimburse the plaintiff?

"Answer—Yes."

The answers must be taken together, and thus taken, they show that the plaintiff was requested by *Brown*, to take up and redeem the paper, with a promise of reimbursement, and that, in pursuance of such request and promise, the plaintiff took up and redeemed the paper, and surrendered it to *Brown*, in consideration of which the note was given. These special findings are entirely consistent with the general verdict, and the judgment is right, if, upon the facts above stated, the plaintiff is entitled to recover at all.

This brings us to the question first raised by counsel, as to the legality of the consideration of the note.

From the evidence, it is apparent that the paper taken up and redeemed by the plaintiff, and more of the same character, was designed and intended to circulate, and to some extent did circulate, as bank bills. For the purposes of this case, we may assume that the charter of the company did not authorize the issuing, by the company, of any such paper. The paper, then, supposing it to have been that of the company, was void, and the company not liable therefor. *Smead* v. *The Indianapolis, &c., Railroad Co.,* 11 Ind. R. 104.

Notes issued by an unauthorized bank, are void, and the individual stockholders are not liable upon them. *Brown* v. *Killian,* 11 Ind. R. 449. Such notes are not a good consideration for a promissory note. *Skinner* v. *Deming,* 2 *id.* 558.

The paper in question, supposing it to be that of the *Logansport Insurance Company,* was, perhaps, void, and in itself, not a good consideration for a promissory note. But

whether it was the paper of the company, or merely that of *Brown*, accepted by the company, we need not decide for the purposes of this case. *Brown*, to be sure, was treasurer of the company, and transacted its principal business; but the orders in question do not purport to be drawn by the company, but by *Brown*, and that without anything being stated on the face of the paper to show that he was acting for the company in thus drawing. The drawing of these orders seems to have been the individual act of *Brown;* and, according to the case of *M'Clure* v. *Bennett*, 1 Blackf. 189, might bind him, though the corporation had no authority to draw such paper. See, also, *Crum* v. *Boyd*, 9 Ind. R. 289, where it is held that "an agent who binds himself personally to pay, will be liable, although the consideration may move to his principal."

These orders were drawn upon, and accepted by the company, and although the acceptance might be void, as not being within the powers of the company, still *Brown* might be liable as drawer, if the drawing be considered his individual act. If, on the other hand, these orders be deemed to be drawn by the company, then they amount to promissory notes, being drawn by the company upon itself. *St. James' Church* v. *Moore*, 1 Ind. R. 289.—*The Marion, &c., Railroad Co.* v. *Dillon*, 7 id. 404.

It may be remarked, that at the time of drawing the orders in question, we had a statute providing "That all bills of any denomination whatever, hereafter to be issued by any individual or individuals, company or corporation, in this state, other than the *State Bank of Indiana*, either in the form of certificates or receipts for the deposit of money, or of promises to pay the bearer, or any specific person, any sum whatever, for the purpose of being used as a circulating medium, or as a substitute for bank notes, shall be deemed as fraudulent and void." R. S. 1843, p. 1042.

If the orders in question are not to be deemed as having been drawn by the company upon itself, and, therefore, equivalent to "promises to pay the bearer," it may be questionable whether they come within the terms of the stat-

ute, as they are not "in the form of certificates or receipts for the deposit of money."

But we decide nothing upon this question, as the conclusion to which we have come renders it unnecessary. We place the case upon the assumed ground, that the orders were issued without authority, and in violation of law, and were fraudulent and void.

The issuing and putting in circulation of the orders, if anything, constitutes the violation of law. It was certainly legal, and morally right, for the persons who made and put in circulation the paper in question, to redeem it. This was prohibited by no statute or rule of the common law. The persons who had perpetrated the fraud, by putting in circulation paper which they were not bound to pay, had the right, legally and morally, to remedy the wrong, by redeeming the paper. This they might do, either personally, or through the agency of others. *Brown's* name was attached to this paper as drawer, either personally, or on behalf of the company, and he had a right to redeem it, and for that purpose, to employ the plaintiff. The contract between them had no connection with the original violation of law, which was the issuing and putting in circulation of the orders. The fact that the plaintiff was redeeming the paper, might have given it additional credit and circulation, but that cannot render the redemption of it illegal. It is clear to our minds that there was nothing illegal in the redemption of the paper, or the contract between the plaintiff and *Brown* for that purpose, and, therefore, the consideration of the note was not illegal. This view is not only sustained by principle, but by very high authority.

The case of *Armstrong* v. *Toler*, 11 Wheat. 258, is in point. The action was assumpsit brought by *Toler* against *Armstrong*, to recover a sum of money paid by *Toler* on account of goods, the property of *Armstrong* and others, consigned to *Toler*, which had been seized and libelled in the District Court of *Maine*, in the year 1814, as having been imported contrary to law. The goods were shipped during the late war with *Great Britain*, at *St. Johns*, for

Vol. XIII.—8

Nov. Term,
1859.

WRIGHT
v.
HUGHES.

*Armstrong* and other citizens of the *United States*, and consigned to *Toler*, who was a domiciled citizen of the *United States*. The goods were delivered to the agent of the claimants, on stipulation to abide the event of the suit, *Toler* becoming liable for the appraised value; and *Armstrong's* part of the goods were afterwards delivered to him on his promise to pay *Toler* his proportion of any sum for which *Toler* might be liable, should the goods be condemned. The goods having been condemned, *Toler* paid their appraised value, and brought this action to recover back from *Armstrong* his proportion of the amount. At the trial below, the defendant resisted the demand, on the principle that the contract was void, as having been made on an illegal consideration. The plaintiff recovered, and the judgment was affirmed by the Supreme Court. Chief Justice MARSHALL, in delivering the opinion of the Court, said:

" Questions upon illegal contracts have arisen very often, both in *England* and in this country; and no principle is better settled than that no action can be maintained on a contract, the consideration of which is either wicked in itself, or prohibited by law. How far this principle is to affect subsequent or collateral contracts, the direct and immediate consideration of which is not immoral or illegal, is a question of considerable intricacy, on which many controversies have arisen, and many decisions have been made. In *Faikney* v. *Reynons*, 4 Burr. 2069, the plaintiff and one *Richardson* were jointly concerned in certain contracts prohibited by law, on which a loss was sustained, the whole of which was paid by the plaintiffs; and a bond was given to secure the repayment of *Richardson's* proportion of the loss. To a suit on this bond, the defendants pleaded the statute prohibiting the original transaction, but the Court held on demurrer that the plaintiff was entitled to recover. Although this was the case of a bond, the judgment does not appear to have turned on that circumstance. Lord MANSFIELD gave his opinion on the general ground, that if one person apply to another to pay his debt (whether contracted on the score of usury

or for any other purpose), he is entitled to recover it back again. This is a strong case to show that a subsequent contract, not stipulating a prohibited act, although for money advanced in satisfaction of an unlawful transaction, may be sustained in a Court of justice. * * * * In the case of *Petrie* v. *Hanway*, 3 T. R. 418, the testator of the plaintiffs was engaged with the defendant and others in stock transactions, which were forbidden by law, on which considerable losses had been sustained, which were paid by *Portis*, their broker. *Keeble* repaid the broker the whole sum advanced by him except £84, which was, in part, the defendant's share of the loss, for which *Keeble* drew a bill on the defendant, which was accepted. The bill not being paid, a suit was brought upon it by *Portis* against the executors of *Keeble*, and judgment was obtained, they not setting up the illegal consideration. The executors brought this action to recover the money they had paid, and it was held, by three judges against one, on the authority of *Faikney* v. *Reynons*, that the plaintiffs could maintain their action. A distinction was taken in cases where money was paid by one person for another, for an illegal transaction, by which the parties were not bound; between a voluntary payment, and one made on the request of the party; between an assumpsit raised by operation of law, and an express assumpsit. Although the former would not support the action, it was held that the latter would. This, also, is a strong case to show that a new contract, by which money is advanced at the request of another, or, which is the same thing, where there is an express promise to pay, may sustain an action, although the money was advanced to satisfy an illegal claim. In *Farmer* v. *Russell*, 1 B. and P. 295, it was held that if *A.* is indebted to *B.* on a contract forbidden by law, and pays the money to *C.* for the use of *B.*, a Court will give judgment in favor of *B.* against *C.* for this money. In this case, *B.* could not have recovered against *A.*; but when the money came into the hands of *C.*, a new promise was raised on a new consideration, which was not infected by the vice of the original contract. In this case, Chief

Justice EYRE said that the plaintiff's demand arose simply from the circumstance that money was put into the hands of *C.* for his use; and Justice BULLER said that the action did not arise on the ground of the illegal contract. Yet, in this case, *A.'s* original title to the money was founded on an unlawful contract, and he could not have maintained an action against *B.* The general proposition stated by Lord MANSFIELD, in *Faikney* v. *Reynons,* that if one person pay the debt of another, at his request, an action may be sustained to recover the money, although the original contract was unlawful, goes far in deciding the question now before the Court. That the person who paid the money knew it was paid in discharge of a debt not recoverable at law, has never been held to alter the case."

The case of *Armstrong* v. *Toler,* and the authorities therein cited, establish the legality of the consideration of the note sued upon in the case at bar, and also its sufficiency. Had the orders been redeemed by the plaintiff, without a previous request or promise of reimbursement, perhaps the surrender of them would not have been a sufficient consideration for the note. In such case, there would have been a mere moral obligation, which, without some precedent good consideration, is not sufficient to sustain an express promise. *Wiggins* v. *Keizer,* 6 Ind. R. 252. But such was not the case. The plaintiff, at the request of *Brown,* and upon his promise of reimbursement, redeemed the orders.

The case falls within another principle decided in *Wiggins* v. *Keizer, supra.* It was there held that the father of a bastard child is not (without an order of filiation) liable for its support, and that a promise by such father to pay for the past support of such child is not binding, but that a promise for the future support of such child is based upon a sufficient consideration and binding. So here, the orders having been redeemed in pursuance of a previous request and promise of reimbursement, such promise was valid and binding, and afforded a sufficient consideration for the note. Had the note not been given, an action might have been maintained on the agreement for the

money expended in the redemption of the orders. "Where money has been paid at the request of the defendant, either express or implied, it may be recovered as money paid to the use of the defendant, though paid in satisfaction of a claim against the defendant which could not have been enforced at law." Chit. on Cont., 594. See, also, *Pawle* v. *Gunn*, 4 Bing. (N. C.) 448.

We are of opinion that the judgment is right, and it must, therefore, be affirmed.

*Per Curiam.*—The judgment is affirmed with 10 per cent. damages and costs.

*H. P. Biddle* and *B. W. Peters*, for the appellants.

*D. D. Pratt*, for the appellee.