Nov. Term, 1860.

BUTLER
v.
EDGERTON.

------

## BUTLER and Another *v.* EDGERTON.

*A.* sold to *B.* two bonds of the *Cincinnati and Chicago Railroad Company,* for $500 each, payable on the 1st of *May,* 1859, at *Cincinnati,* in the State of *Ohio,* to *John McLean,* a citizen of that place, with 10 per cent. interest; which, by the law of that State, was a legal rate of interest. *A.* guaranteed to *B.* the payment of the bonds according to their tenor. Subsequently, and before the maturity of the bonds, *A.* took them up, substituting his own agreement to pay to *B.* the principal and interest of the bonds, as by his guaranty he was already bound to do in case of default by the company.

Nov. Term,   Suit by *B.* upon this agreement.

1860.   *Held,* that when the complaint specially sets out the consideration of the agreement sued on, a general answer of want of consideration is included in the general denial.

BUTLER
v.
EDGERTON.   *Held,* also, that as all the evidence that could have been given under such an answer, was admissible under the general denial, the judgment will not be reversed for the failure to reply to it.

*Held,* also, that the return of the bonds to *A.* constituted, *prima facie,* a good consideration for the instrument sued on, irrespective of their validity or invalidity.

*Held,* also, that the bonds, being payable in *Ohio,* are, at common law, to be regarded as made in that State ; and that our statute, which provides that railroad companies may dispose of their bonds at such rate of interest as is allowed by the laws of the State where such contract is made (Rev. Stat. 1852, vol. 1, p. 417), has not changed this rule as to railroad companies.

*Held,* also, that the reservation of 10 per cent. interest in the bonds being valid, and not usurious, by the law of *Ohio,* the guaranty of *A.* was also valid ; and the agreement sued on, being merely substituted as a security, was not tainted with usury.

*Held,* also, that, in reality, the instrument sued on amounts but to an agreement to pay a given sum of money, being the amount of principal and interest of the bonds.

*Monday,*
*November* 26.   APPEAL from the *Wayne* Circuit Court.

PERKINS, J.—Suit by *Edgerton* to recover the amount due upon an instrument reading as follows :

" *Tenth* Month, 31st, 1857.

This is to certify that we, *Nathan George* and *William Butler,* of *Wayne* county, State of *Indiana,* having sold to *Walter Edgerton,* of *Henry* county, State aforesaid, on the 30th of *tenth* month, 1854, two five hundred dollars real estate mortgage bonds on the *Cincinnati and Chicago Railroad Company,* drawing 10 per cent. interest per annum, payable half yearly, and due the 1st of *May,* 1859 (*Butler* and *Meredith,* trustees), and at the time entered into an obligation to secure to the said *Walter Edgerton* the payment of the said interest as it should come due, and the bonds themselves when they should become due ; and desiring to avail ourselves of the privilege of disposing of said bonds, for which we have been standing accountable, before the arrival of the said 1st of *May,* 1859, have taken the said bonds of the said

*Edgerton*, and do hereby promise to pay the sum of one thousand dollars, to the said *Walter Edgerton*, or order, on or before the 1st of *fifth* month, 1859; and also to pay to him the same interest that would have accrued on said bonds; that is, 10 per cent. per annum; and to pay it up every half year from the date of this obligation.

" *William Butler.*<br>" *Nathan George.*"

The complaint sets out specially the consideration for which the instrument was given, besides furnishing a copy of the instrument.

Breach, by non-payment, alleged.

The defendant answered:

1. By general denial.

2. By a general allegation, that the instrument was executed without any consideration therefor.

This paragraph was included in the general denial, as the complaint specially set out the consideration. And if evidence to contradict the statement of the consideration contained in the agreement could have been given under the special, it could have been under the general paragraph. The special paragraph, therefore, might have been rejected on motion. , It added nothing to the defense. Ind. Dig. 655.

3. Other paragraphs set up illegality in the bonds mentioned in the instrument, and others still, usury, which, it is claimed, also taints the instrument sued on.

The plaintiff replied; "that the said several bonds in the agreement in his complaint specified and sued on, and the several sums of money therein set forth, and the interest thereon payable semi-annually, were and are, by the agreement of the parties thereto, made payable at the office of the *Ohio Life Insurance and Trust Company*, in *Cincinnati*, in the State of *Ohio;* and that *John McLean*, the payee of said several bonds, at the time of the execution of said bonds, was, and ever since has been, and still is, a citizen and resident of the State of *Ohio*, and said city of *Cincinnati:* That heretofore, to wit, on the 14th day of *March*, 1850, the General Assembly of the State of *Ohio* passed an act of said State, in the words and figures following, that is to say:

'An act to amend an act entitled an act fixing the rate of interest, passed *January* 12, 1824, and all laws on that subject, passed *March* 14, 1850, took effect *May* 1, 1850.

'SECTION 1. *Be it enacted by the General Assembly of the State of Ohio*, That the parties to any bond, bill, promissory note, or other instrument for the payment or forbearance of money, may stipulate therein for interest receivable, upon the amount of such bond, bill, note or other instrument, at any rate not exceeding 10 per centum yearly.'

"And the plaintiff avers that said act of the General Assembly of the State of *Ohio*, became the law of the State of *Ohio*, on the 1st day of *May*, 1850, and at the date of the execution of said several bonds, and their negotiation, and for six years thereafter, so remained the law of said State, wherefore, &c."

The cause was tried by the Court, and there was judgment for the plaintiff for the amount specified in the instrument, with interest at 10 per cent.

Before proceeding to the main questions in the cause, we may dispose of one of practice.

There was no reply to the paragraph of the answer, above set out, averring generally a want of consideration; and it is claimed that there was a trial without an issue, and that such trial constitutes an error, for which the judgment must be reversed.

As all the evidence that could have been given under the paragraph in question was admissible, as we have seen, under the general denial, a case is not presented for the application of the rule reversing a judgment for the want of an issue at the trial.

Again : this error was not assigned as a ground for the motion for a new trial; and if going to trial without an issue is an error occurring at the trial, it is waived by omitting to assign it as a cause for a new trial. *Kent* v. *Lawson*, 12 Ind. 675. This point we suggest, but do not decide.

Further : trial without an issue, is not one of the errors assigned upon the record in this Court.

We now advance to the two main questions in the cause, which are :

1. Was the instrument sued on executed upon a valid consideration?

2. Is the instrument usurious?

The consideration of the instrument, was the surrender, by the promissee in it, to the promissors, of railroad bonds which the latter had sold (and, as we must presume, received the pay for), to the former, guaranteeing their payment. Such return constituted, *prima facie*, a good consideration, irrespective of the validity or invalidity of the railroad bonds. The case of *Wright* v. *Hughes*, 13 Ind. 109, will meet every view that can be taken of that at bar on the question of consideration, as to the principal of the bonds; and if the 10 per cent., which the instrument provides for, is to be regarded as simply a part of the aggregate amount to be paid for the return of the bonds, it is covered by the same case; but if it is to be regarded as interest for the forbearance of money, then it will become necessary to inquire into its legality. For the present we will so regard it, and, hence, make the inquiry suggested.

From the contract sued on, we learn that the railroad bonds in question drew 10 per cent. interest. By the replication, we learn that they were payable in *Ohio*, to a citizen of that State.

These bonds, being payable in *Ohio*, were, by the common law, governed by the law of that State. They were, in legal effect, made in that State—they were *Ohio* contracts. *Cox* v. *The United States*, 6 Pet. 172.—*Boyle* v. *Zacharie, Id.* 635.— See, *Everett* v. *Vendryes*, 19 New York Rep. 436, and *Shanklin* v. *Cooper*, 8 Blackf. 41; which, doubted as cases between indorsers and indorsees, are good law as between holders, and makers, and acceptors. Byles on Bills, Am. Ed. top. p. 444, is in point.

Has our statute changed this law as to railroad companies? It enacts that they may borrow money, and may issue and dispose of their bonds for the sums borrowed, " at such rate of interest as is allowed by the laws of the State where such contract is made." We think this means, where such contract is, in legal effect, made. What else can it mean? The corporation being located in this State, must be presumed to have

its office, its seal, &c., here, and to do its business, and make its contracts here; but still, these contracts are, it is assumed in the statute, to have force and effect according to the laws of other States. How can this be, except it is by regarding those made to be performed in other States, as being contracts of such States; or do the words, "where such contract is made," relate to the verbal negotiation, and have no reference to the place where the bond for the money advanced is executed? If so, it is averred in this case, that the bond was made payable in *Ohio*, to *John McLean*, a citizen of *Ohio*; and it would be presumed, in the absence of any thing appearing to the contrary, that the agent of the company had negotiated with him in *Ohio* for the loan. At all events, such fact could be proved under the issues. The evidence is not in the record. We must presume it sustains the judgment. As to what is to be considered the place of the contract, see *Cook* v. *Litchfield*, 5 Sandf. (N. Y.) Rep. 330.

The bonds, then, we must hold valid, both as to principal and interest; and when *Butler* and *George* sold and guaranteed them, and received their pay, they made a legal contract. That contract has not been rescinded. *Butler* and *George* have not refunded to *Edgerton* the money he paid on it. A rescission was not desired; but *Butler* and *George* desired simply, to substitute another obligation for its performance on their part, which *Edgerton* accepted. In this view, the whole agreement would seem to be valid.

But in reality, it amounts but to an agreement to pay a sum of money, being the amount that would be due, including principal and interest, on certain bonds, and at the times when the same installments became due.

*Per Curiam.*—We think the judgment should be affirmed, with 5 per cent. damages and costs.

*O. P. Morton*, *Caleb B. Smith*, *F. Kibbey*, and *Watt. J. Smith*, for appellants.

*J. S. Newman* and *O. Newman*, for appellee.