Nov. Term,

1861.

BUTLER
v.
MYER.

Tuesday,
November 26.

---

## BUTLER and Others v. MYER.

17 77|
Case 2
d164 684|

On *December* 22, 1857, *A.* recovered a judgment against the *Cincinnati and Chicago Railroad Company,* upon which he caused an execution to be issued, and levied upon certain real estate. *B.,* who was in possession of the land, filed his bill to enjoin the sale on the execution, alleging that on *October* 1, 1853, the railroad company, being then the owner of said land, conveyed the same, with other property, to trustees, in trust to convey the same in satisfaction of bonds of the company, as the company should direct; that on *January* 13, 1857, said trustees, by the direction of the company, conveyed the land to plaintiff's grantors, they having taken up, and surrendered to the company, her said bonds, to the amount of the appraised value of the lands. Answer: that the bonds of the company, mentioned in the complaint, were executed, by a corporation, under the authority of the State of *Indiana,* and were made payable in the State of *New York,* bearing interest at ten per cent.; that instruments bearing a higher rate than seven per cent., were void by the law of the State of *New* York, which was set out.

*Held,* that as one of the trustees resided in *Ohio,* and the deed of trust was executed and acknowledged in that State, and recites that the bonds have been "this day" issued, &c., the inference is that the bonds were negotiated in that State; and there is nothing to show that such a rate of interest was illegal in that State.

*Held,* also, that the place of the delivery of a bond or note, and not the place where it is dated, or signed, is the place of its execution.

*Held,* also, that a contract made in one State, to be performed in another, is to be governed by the law of the place of performance, so that if a

Nov. Term,
1861.

BUTLER
v.
MYER.

contract is illegal, on account of usury, by the law of the place where it is made, it may still be upheld by virtue of the law of the place of performance.

*Quære:* Whether a contract, valid by the law of the place where it is made, and where both parties reside, when sought to be enforced in the Courts of the State where it was made, will be held void because the law of the State in which the parties have fixed the place of performance would make it void.

*Held,* also, that if a conveyance be made to a third person, in satisfaction of illegal claims taken up by such third person, at the request of the grantor, such conveyance is upon a valid consideration; and, in this case, there was such a consideration, even if the bonds were void for usury.

*Held,* also, that there is no reason why corporations should not be bound by the same moral considerations that bind individuals.

*Held,* also, that if a debtor makes a conveyance of his land to his creditor in satisfaction of a usurious debt, the deed, being an absolute conveyance and not a mortgage, can not be avoided for the usury.

*Tuesday,*
*November 26.*

APPEAL from the *Wayne* Circuit Court.

PERKINS, J.—On *August* 27, 1857, one *William Butler* commenced suit against the *Cincinnati and Chicago Railroad Company,* and on *December,* 22 following, obtained judgment in the suit for $65,000. On *January* 26, next succeeding, *Butler* caused execution to be issued upon the judgment, which execution, sometime afterward, was levied upon a tract of land of which *Isaac Myer* was in possession, and claimed to be the owner.

*Myer* subsequently filed his complaint for an injunction, to restrain the sale of the land upon the execution. He alleged that said railroad company, on *October* 1, 1853, then being the owner, in fee simple, of the lands levied on, with others, conveyed them to *John McLean* and *Solomon Meredith,* in trust to convey the same in satisfaction of bonds theretofore issued by the company, as said company should direct, &c. He further alleged, that on *January* 13, 1857, said trustees, by the direction of the company, conveyed the lands in controversy in this suit, in fee simple, to *Lewis B. Morrison* and *Thomas Newby,* they having taken up, and surrendered to the company, her bonds, to the amount of the appraised value of the lands, viz., $4,000. He further alleged, that afterward, on *March* 21,

1859, said *Morrison* and *Newby*, for a valuable consideration, conveyed the lands in fee simple to him, the plaintiff, *Myer*.

The deeds above mentioned, including the trust deed, were all recorded in due time, and proper places.

The defendants answered that the bonds of the company, mentioned in the complaint, were executed by a company acting under the authority of the State of *Indiana*, and were made payable in *New York*, bearing interest at ten per cent.; that instruments bearing a higher rate of interest than seven per cent. were void by the law of *New York*, setting out the statute making them so.

A demurrer was sustained to the answer, and the sale of the land perpetually enjoined.

The defendants, *Butler* and others, appeal to this Court, and they here insist upon a reversal of the judgment below, on the ground that the railroad bonds mentioned, were void, and, hence, no consideration for the trust deed, or the deed of the trustees to *Morrison* and *Newby*.

We will examine this proposition, and should we come to the conclusion that the bonds were void, it will then be necessary for us to consider the further propositions, whether that fact made the deeds, given for their conveyance, without consideration; and if so, whether this latter fact renders void the title of *Myer*, if he must be taken to be a *bona fide* purchaser from *Morrison* and *Newby*.

The bonds are assumed to have been prepared in *Indiana*, and to have been made payable in *New York*, bearing ten per cent. interest, a greater rate than is allowed by law in either *Indiana* or *New York*; and, hence, it is insisted, the bonds are illegal by the laws of both States  In such case, it seems the ultimate fate of the illegal security is determined by the law of the place where it is executed. *Min* v. *The Madison Insurance Co.*, 11 Ind. 117. By the law of *Indiana*, the bonds would only be void, on the ground of usury, to the extent of the interest. It is, however, objected, we may here observe, that no person except the maker of an usurious instrument, or another by his permission, can avail himself of the defense of usury. *Conwell* v. *Pumphrey*,

Nov. Term,
1861.

BUTLER
v.
MYER.

9 Ind. 135; *Stevens* v. *Muir*, 8 Ind. 352; *Wright* v. *Bundy*, 11 Ind. 398. The heirs, representatives, and creditors of the maker of the usurious instrument, may do so. *Dix* v. *Van Wyck*, 2 Hill, (N. Y.) 522. We may also properly remark here, that it is claimed that if the bonds were usurious, they were void for another reason, viz., want of power in the corporation to issue them. It is claimed that there is a difference, in this respect, between the paper of a corporation and an individual; that a corporation has power, by its charter, to execute legal contracts only, and that such as are illegal, are therefore *ultra vires*, and void, on that ground. See Angel and Ames on Corp. 6 ed. p. 275, for the authorities on this point. *Billingsley* v. *The State Bank*, 3 Ind. 375, is also cited by counsel, *contra*. See, also, *The Evansville, &c. Co.* v. *The City of Evansville*, 15 Ind. 395. But are the bonds in question shown to be usurious? for if they are not, they are not shown to be illegal on either ground. If they are not usurious, they are not void as being *ultra vires*.

The record contains no copy of even a single one of the bonds. It does not state where they were issued, nor where they were negotiated, or intended to be negotiated; and it would seem that such place might determine the question of the validity of the bonds under the peculiar phraseology of our statute. See *Butler* v. *Edgerton*, 15 Ind. 20.

It is averred that the *Cincinnati and Chicago Railroad Company* was incorporated under the general law of *Indiana*, and from this fact alone, the presumption would arise, that the company acted in this State. See *Butler* v. *Edgerton*, 15 Ind. 15. But the further facts appear of record, that the deed of assignment was executed and acknowledged by the corporation in *Cincinnati, Ohio*, and that one of the trustees resided there. And as to the issuing of the bonds, the deed of trust recites as follows:

"Whereas, the party of the first part, in the lawful exercise of their corporate powers, are authorized to borrow the sum of one hundred thousand dollars; and whereas, they are now about to borrow the sum of one hundred thousand dollars, to be expended in the construction of their road, from the line dividing the States of *Ohio* and *Indiana*, to the

town of *New Castle*, in said State of *Indiana*, and to this end, have this day issued certain bonds, to the amount of one hundred thousand dollars, &c., payable at a certain bank in the city of *New York*, five years after date," &c.

This is said by the corporation, at *Cincinnati*, *Ohio*, while issuing the security for the satisfaction of the loan; and can any other inference be fairly drawn from the facts stated, in the absence of any thing showing the contrary, than that the bonds were issued and delivered, and the loan contracted for, was negotiated, in fact, in *Cincinnati*, *Ohio?* And, it is not material, even "on a question of usury, where the contract, note, or other security is dated, or signed; for the place where it is delivered, is the place of execution." Edwards on Bills and Notes, p. 182.

The bonds in question, then, may be taken, in now considering the case, as executed in *Ohio*, where it is not shown but that ten per cent. interest is allowed; and, in favor of the validity of the action of the corporation, we may so presume. Our statute expressly authorized the corporation to execute bonds, "at such rate of interest as is allowed by the laws of the State where the contract is made." *Butler* v. *Edgerton*, 15 Ind. 19. But the bonds, though legal where issued, were made payable in *New York*, where the rate of interest they bore was usurious; and the question is, did that fact render them void?

The general principle is well settled, that contracts made in one State, to be performed in another, are to be governed by the law of the place of performance; so that if the contracts are illegal, on account of usury, by the laws of the place where made, if to be performed there, still they will be upheld as legal, by virtue of the law of the different place of performance. *Andrews* v. *Pond*, 13 Pet. 65; *Jacks* v. *Nichols*, 1 Seld. 178; Curtis' Digest, p. 96; *Butler* v. *Edgerton*, 15 Ind. 15; *Hyde* v. *Goodnow*, 3 Comst. 266. See this latter case for an exception to the rule. Also, *The Commonwealth of Kentucky* v. *Bassford*, 6 Hill, (N. Y.) 526. But can it also be laid down as a general principle, that contracts valid in the State where made, and where both parties to them reside, and when sought to be enforced in the

Nov. Term, 1861.

BUTLER
v.
MYER.

Courts of such State, will be held void, because the law of the State in which the parties had fixed the place of performance, would make them so? Or will the rule change, where it may be necessary to uphold the contract? On this point, the authorities involve a palpable antinomy, which we may state, but shall not remove.

Contracts on which interest is recoverable, are of two general classes, viz., those which stipulate a rate of interest, and those which do not. In relation to this latter class, it seems to be generally agreed that the law of the place of performance will govern the Courts, as to the rate of interest to be allowed. See *Hunt* v. *Standart*, 15 Ind. 33. In regard to the former class, the Supreme Court of *Louisiana*, in *Depau* v. *Humphreys*, 4 Cond. La. Rep. 403, held that interest might be expressly stipulated for, according to the law of the place where the contract was made, or of that where it was to be performed, and that the express stipulation would be enforced in all Courts. This doctrine is expressly sanctioned in *Chapman* v. *Robertson*, 6 Paige, (N. Y.) 627. See, also, *Hanrich* v. *Andrews*, 9 Porter, 9, cited in Byles on Bills, 3d Am. Ed. p. 448, note; *Allen* v. *Schenckhardt*, Am. L. Reg. (N. S.) vol. 1. p. 13.

Judge *Story* combats the correctness of the decisions in the *Louisiana* and *New York* cases, (Story's Conflict of Laws, § 298, *et seq.*,) and attempts to show them unsupported by the current of authority.

Another proposition has been held in some of the Courts, viz., that a note or bond for the payment of money may be governed by the law of one State, where it is made payable, and the mortgage upon land to secure the payment of such note or bond, be governed by the law of another, where the land is situate, and the mortgage must be foreclosed. This, if we rightly understand *Chapman* v. *Robertson*, *supra*, is the decision in that case; but Judge *Story* does not approve of the decision in that case, upon this point. Conflict of Laws, §§ 293 *b*, and 293 *c*.

We shall stand upon none of the above grounds, in deciding the case at bar, and, hence, shall express no opinion as to their legal strength.

Nov. Term, 1861.

BUTLER
v.
MYER.

There are two other grounds of undoubted solidity, upon which we prefer to rest the present decision:

1. If a conveyance be made by the grantor to a third person, in satisfaction of illegal claims taken up by such third person, at the request of the grantor, such conveyance is upon a valid consideration. *Wright* v. *Hughes,* 13 Ind. 109; *Butler* v. *Edgerton,* 15 *id.* 15.

Such was the consideration in this case, (supposing the bonds to have been usurious) of the deed from the corporation, through the trustees, to *Morrison* and *Newby.*

If it be objected that the contracts, in the cases cited, were between individuals, and that the same rule should not apply to corporations, we answer, that we can see no reason why corporations should not be bound by the same moral considerations that bind individuals. It has been intimated that an administrator, acting as he does in a trust capacity, is not bound, in behalf of the estate, to set up such technical defenses as the statute of limitations, &c. See *Riser* v. *Snoddy,* 7 Ind. 442.

But if it be conceded that the directors, without the consent of the stockholders, would be unable to bind the corporation by such conveyance, surely they could with such consent. In this case, such consent is clearly inferable from the acquiescence of the stockholders in the deed of trust, without objection, since 1853. *Smead* v. *The Indianapolis, &c. Co.,* 11 Ind. 104.

2. If a debtor makes a conveyance of his land to his creditor in satisfaction of a usurious debt, the deed, being an absolute conveyance, and not a mortgage, can not be avoided for the usury. *Denn* v. *Dodd,* 1 John. Cas. 158. This case is directly in point, and is recognized as law in *Dix* v. *Van Wyck,* 2 Hill, (N. Y.) 522, in which case, *Pratt* v. *Adams,* 7 Paige, 615, is also cited as supporting the proposition. And see *Bissell* v. *The Michigan, &c. Railroad Co.,* 22 N. Y. Court of Appeals, 258; and *Parish* v. *Wheeler, id.* 494. The case at bar falls directly within the above principle. The corporation had power to convey real estate, and so had the trustees, and the legal title passed by the conveyance of each. It is not necessary, therefore, that we should inquire

Nov. Term,  whether *Myer* would not be protected, at all events, as a
1861.       *bona fide* purchaser. Hill on Trustees, p. 504.

JONES            *Per Curiam.*—The judgment is affirmed, with costs.
v.          J. B. *Julian* and Thomas A. *Hendricks*, for the appellant.
GREGG.      *Nim. H. Johnson,* for the appellee.