Radcliff, J.
1. The respondent paid the money on the notes guarantied by him'for his own indemnity. He stood in the character of surety; and having paid the money for his principals, he was entitled to receive it again, with interest from the time of payment.
With regard to the notes of Whippo endorsed by Walter Livingston, there is no evidence that he acted without authority in compromising with the latter at 13 shillings and 4 pence in the pound. On the contrary, the respondent, in his answer in chancery, swears, that he communicated *lhe negotiations of the creditors of Walter Livingston to the appellants; that he has no doubt but the latter assented to the terms which were, made, and is certain they made no objection, and that he and they were in habits of intimacy at the time.(a) The answer in this *430 particular must be received as evidence until disproved, and of course the respondent cannot be deemed responsible for more than the real amount he received from the notes endorsed by Walter Livingston, as he acted therein as the agent of the appellants, and by their authority The difference between the siina so received and the amount of the moneys paid by him as their surety, must, therefore, bé the measure of his demand.
2. The chancellor did right in proceeding to decree on the merits. The whole ease was before him, and a court of law must proceed by the same rule, as to the amount of the respondent’s recovery.- There could, therefore, be no use in sending it again to be tried at law ; and it would be attended with unnecessary litigation and expense. The appellants ought not to complain of a decision on the whole merits. They sought their remedy in chancery, and cannot seek it in parcels. Although their bill prayed an injunction and specific relief only, the chancellor had a right to decide against the whole relief sought, and to decree in favor of the defendants, and was not confined to any one specific object stated in the bill. The whole case was before him, and it was his right and his duty to decide definitively between the parties.
I am, therefore, of opinion, that the decree ought to be affirmed.
Kent, J.
1. I admit that the respondent, by taking the note of Whippo, endorsed by Walter Livingston, to collect for the use of the appellants, had no authority to sell it at a depreciated rate; but having received propositions from Henry Livingston to pay the note at the *rate of 13 shillings and 4 pence in the pound, and Walter Livingston being generally reputed insolvent, and process actually awarded against him as an absconding debtor ; and the respondent having communicated, (as appears by his answer,) the propositions made by Henry Livingston to the appellants, who made no objections to them, they mast, I think, be considered as having assented to, or ratified the same. And the maxim is omnis ratihabitio mandato mquiparatur. The intimacy between the parties, and their long silence, confirm this conclusion. The respondent is answerable, then, for the note to the amount of 13 shillings and 4 pence in the pound, according to'the chancellor’s decree.
2. The court of chancery having acquired cognizance of a suit, for the purpose of discovery or injunction, will, in most cases of account, whenever it is in full possession of the merits, and has sufficient materials before it, retain the suit, in order to do complete justice between the parties, and to prevent useless litigation and expense. (3 Atk. 263. Cases in Ch. 40. Fonb. Eq. 12.)
3. It appears to be admitted by the appellants, that the *431 respondent paid for them, as guarantee, to the amount of 40 shares, 25 of which he advanced on or about the 1st of May, 1792; and though he took up Pierpont’s note in March preceding for 4290 dollars ; yet the appellants were not obliged to pay until May, nor the respondent to take up the note till that time.
The price of the stock in May, ought, therefore, to be the criterion, for, perhaps, the respondent may have paid a higher price in March. I do not think it a gambling act in the respondent to take up the note prior to May. Prudence, and his own security, may have dictated such a measure.
I am, therefore, for affirming the decree.
*A majority of the court being of the same opinion, it was, thereupon, ordered, adjudged and decreed, that the decree of the court of chancery be affirmed.
Judgment of affirmance.(b)

(a) Om?iis ratiJiaíitio retrotraJiitur et mandato priori mquiparatur, or as it is expressed in Lawrence v. Taylor, (5 Hill, 107, 113,) an adoptive authority relates back to the time of the original transaction, and is deemed in law the same to all purposes as if it bad been given before. Mr. Dunlap, in bis learned notes to Paley on Agency, has so fully considered this subject as to supersede the necessity of any further investigation. “ The doctrine on this subject is stated, as usual, with clearness and precision in Liv. Pr. & Ag. vol. 1, p. 44, et seq. The author says: ‘ If I make a contract in the name of a person, who has not given me an authority, he will be under no obligation to ratify it, nor will he be bound to the performance of it. But if, with full knowledge of what I have done, he ratify the act, he will be considered to have contracted originally by my agency ; for the ratification is equivalent to an original authority, according to the maxim that omnis ratikabitio mandato ceqúiparatur. The effect of a ratification is also to subject the principal to the same obligations to his agent, as if the latter had been expressly employed to do the business.’ ‘ It is not necessary that there should be an express act of ratification, in order to oblige the principal to the performance of the contract, or to subject him to the obligation of indemnifying his agent; but his subsequent assent may be inferred from circumstances, which the law considers equivalent to an express ratification.’ — ‘ Another effect of ratification is to discharge the agent from the responsibility to his principal, which he has incurred by improper management of the business entrusted to him, or by disobedience of or-
*430 ders.’ Again, vol. 1, p. 391: ‘ We.have seen in a former chapter that the subsequent assent of the .principal will confirm the unauthorized acts of the agent, so that the former will be boand by them in respect to third persons. The same rule applies to the agent’s responsibility. He will be released from any claim against him for damages by any act of his principal which amounts to a confirmation of what has been done.’ (And see Willinks v. Hollingsworth, 6 Wheat. 79. London and Birmingham Railway Co. v. Winter, Cr. & Ph. 57. Towle v. Stevenson, 1 Johns. Cas. 110. Randal v. Van Vechten, 19 Johns. Rep. 60. Skinner v. Dayton, id. 554. Rogers v. Kneeland, 13 Wend. 114. S. C. 10 Wend. 219. Loraine v. Cartwright, 3 Wash. C. C. Rep. 154. Cushman v. Loker, 2 Mass. Rep. 106. Frothingham v. Haley, 3 Mass. Rep. 70. Clement v. Jones, 12 Mass. Rep. 65. Odiorne v. Maxcy, 13 Mass. Rep. 182. Pratt v. Putnam, id. 361. Fisher v. Willard, id. 381. Corning v. Southland, 3 Hill, 552. Moss v. The Rossie Lead Mining Co. 5 Hill. 137. Schimmelpennich v. Bayard, 1 Peters, 264.) The principle of recognition is not affected by any question arising out of the statute of frauds. ‘ An authority, by adopting the transaction, may as well be conferred where the question of agency arises under the statute of frauds, as under the common law.’ (Cowen J. Lawrence v. Taylor, 5 Hill, 113. Davis v. Shields, 34 Wend. 325.) But to render the assent of the principal effectual, it mast be with fail knowledge of the facts.
“ The acts of the principal are to be construed liberally in favor of an adoption of the acts of an agent. (1 Eiv. Pr. & Ag. 394. Codwise v. Hacker, 1 Caines’ Rep. 526.)
“ A person executing an instrument in the name of another, assuming to he his agent, but having in fact no authority for that purpose, does not exempt himself from personal liability to the person with whom he undertook to contract, by the subsequent ratification of the assumed principal. (Palmer v. Stephens, 1 Denio, 471. Rossiter v. Rossiter, 8 Wend. 494.)
“ Where A. does an act as agent for B. without any communication with C., C. cannot by afterwards adopting that act, make A. his agent, and thereby incur any liability, or take any benefit under the act of A. (Wilson v. Turnman, 6 Mann. & Gran. 236.) In that case, (p 242,) Tindal, C. J. delivering the judgment of the court, says: ‘ The seizure of the plaintiff’s goods ’— this was an action of trespass de bonis asportatis — ‘ was made by some officers of the sheriff, without any precedent authority from Turnman, who appeared upon the evidence at the trial to be a plaintiff in some suit, the nature of which did not transpire, but who is found by the jury not to have given any precedent authority to take the goods of the plaintiffs, but to have ratified the taking after it was made. The question, therefore, is a dry question of law, whether the subsequent ratification by the defendant, of a taking under such circumstances, is the same, in its consequences, as a precedent command of the defendant. And we think, under the authorities, and the nature of the thing itself, that it is not__That an act done, for another, by a person not assuming to act for himself,but for such other person, though without any precedent authority whatever, becomes the act of the principal, if subsequently ratified by him, is the known and well established rule of law. In that case the principal is bound by the act, whether it be for his detriment or his advantage, and whether it be founded on a tort or a contract, to the same extent as by, and with all the consequences which follow from the same act done by his previous authority. Such was the precise distinction taken in the Year Book, (H. 7, H. 4, fo. 24, pi. I) — that if the bailiff took the heriot, claiming property In it himself, the subsequent agreement of the lord would not amount to a ratification of his authority as bailiff at the time. The same distinction is also laid down by Anderson, C J. in Godbolt’s Reports, 109 : ‘ If one have cause to distrain my goods, and a stranger, of his own wrong without any warrant or authority given him by the other, takes my goods, not as bailiff or servant to the other, and I bring an action of trespass against him, can he excuse himself by saying that be did it as his bailiff or servant? Can be also father his misdemeanor upon another? He cannot ; for once he was a trespasser, and his intent was manifest.’ — In the present case the sheriff’s officers who were the original trespassers by taking the goods of the plaintiffs, were not servants or agents of the defendant Turnman, but the agents of a public officer or minister obeying the mandate of a court of justice. They did not assume to act at the time as agents or bailiffs of the then plaintiff Turnman, but they acted as the servants of another, viz. the sheriff, by virtue of the process directed to him by the court. And this forms the distinction between the present ease, and that of Parsons v. Lloyd, (3 Wils. 341,) relied upon in the argument. If the defendant Turnman had directed the sheriff to take the goods of the present plaintiffs, under a valid writ, requiring him to take the goods of another person than the defendant ill the original action, such previous direction would undoubtedly have made him a trespasser. But where the sheriff acting under a valid writ by command of the court, and as the servant of tbe court seizes the wrong person’s goods, a subsequent declaration by the plaintiffin the original action, ratifying and approving the taking, cannot, upon the distinction above taken, alter the character of the original taking, and make it a wrongful taking by the plaintiff in the original action.’
“ It is evident that there can be no stronger ratification of the act of an agent, than the principal’s availing himself of the benefit of such act, although unauthorized ; and that in like manner, a person by availing himself of the act of one whom he had not originally appointed his agent, must be deemed retrospectively to have created the agency from which he derives a profit. In either case, the presumed ratification subjects the principal to the same liabilities to third persons or to the agent, as if the latter had, in the one case, acted within the scope of his powers; or in the other, had been a duly consti-
tuted agent. Where bills were drawn by a supercargo, whose authority to thát extent might be doubtful, for the purpose of purchasing a cargo, on the principals and others, to he paid by the principals, who receive the cargo, and dispose of it to a very considerable profit; Marshall, C. J. said : ‘ Can they now he permitted in a court of conscience to question the authority by which the bills were drawn?’ (Clark’s Ex’rs v. Van Riemsdyck, 9 Cranch, 153.) Where a factor was authorized to sell goods at a limited price, and he after-wards sold them below that price, and sent an account to his principal of the sales and prices, authorized him to draw for the balance of the account, and the principal received the account and drew for the balance, and made no objections in his letters, or otherwise, to the conduct of the factor in the sales ; it was held that’his conduct amounted to a ratification of the factor’s proceedings. (Richmond Manufacturing Co. v. Starks, 4 Mason, 296.) So, by bringing a suit against the agent to recover the proceeds of an unauthorized sale, the principal ratifies his act in making the sale. (The President of the Hartford Bank v. Barry, 17 Mass. R. 97. See Smith v. The Birmingham, &c. Gas Light Co. 1 Ad. & Ell. 526. Skinner v. Dayton, 19 Johns. Rep. 554. Forrestier v. Bordman, 1 Story’s Rep. 43. Bell v. Cunningham, 3 Peters, 69. The Episcopal Charitable Society v. The Episcopal Church in Dedham, 1 Pick, 372. Copeland v. The Mercantile Ins. Co. 6 Pick. 203. Shiras v. Morris, 8 Cowen, 60.)
“ In a case in which it was sought to recover upon a bill of exchange accepted in the defendant’s name by his agent, it was held that where no express authority is proved authorizing the agent to bind the principal in the manner he is sought to be charged, but such authority is presumed from the previous conduct of the party recognizing such acts as binding on him, it will be necessary to show that the instrument was taken on the faith of such previous recognition of authority in the agent to bind the principal. (St. John v. Redmond, 9 Porter’s (Alabama) Rep. 428.” Dunlap’s ed. of Paley on Agency, 171, n. (o.) See also id. n. (p.))
“ The assent or acquiescence, by which the principal shall be bound, must be given with knowledge, or the means of acquiring knowledge of all the circumstances of the ease. — A ratification of the unauthorized acts of an attorney in fact without a full knowledge of all the facts connected with those acts, is not binding on the principal. No doctrine is better settled, on principle and authority, than this, that the ratification of the act of an agent previously unauthorized, must, in order to bind the principal, be with a full knowledge of all the material facts. If the material facts be_either suppressed or unknown, the ratification is invalid, because founded on mistake or fraud. (Owings v. Giddings, 9 Peters, 608, 629. Davidson v. Stanley, 2 Mann. & Gr. 721.) If the principal, after a knowledge that his orders have been violated by his agent, receives merchandize purchased for him contrary to orders, and sells the Same without signifying any intention of disavowing the acts of the agent, an inference in favor of the ratification of the acts of the agent may fairly be drawn by the jury ; but if the merchandize was received by the principal, under a just confidence that his order to his agent had been faithfully executed, such an inference would be in a high degree unreasonable. (Bell v. Cunningham, 3 Peters, 69.)
“ When the principal is informed of what has been done, he must dissent, and give notice of it within a reasonable time; and if he does hot, his assent and ratification will be presumed. (2 Kent’s Comm. 616. 1 Liv. Pr. & Ag. 396. Benedict v. Smith, 10 Paige, 127.) Therefore, where the principals received a letter from the agent, in July, informing them of what he had dono, and they were silent until October, and then for the first time complained ; they were considered to have waived any right of action which they may have had. (Cairnes v. Bleecker, 12 Johns. Rep. 300.) The following case stated by Emerigon, Traite des Assurances, vol. 1, p. 144, is cited, 2 Kent’s Comm. 615 ; 1 Liv. Pr. & Ag. 49. — A merchant in Palermo, wrote to a house in Marseilles, that he had shipped goods consigned to them, to be sold on his account. The ship being out of time, the consignees at Marseilles caused the cargo to be insured on account of their friend at Palermo, and gave him advice of it. He received the letter, and made no reply, and the vessel arriving safe, he refused to account for the premium paid by the consignees, under the pretence that they had insured without orders. But the reception of the letter, and the subsequent silence, were deemed by the law merchant equivalent to a ratification of the act. — (See further, Murray v. Toland, 3 Johns. Ch. Rep. 369, 374. Vianna v. Barclay, 3 Cowen, 281. Parhhurst v. Imlay, 15 Wend. 235. Erick v. Johnson, 6 Mass. Rep. 196. Shaw v. Nudd, 8 Pick. 9. Benedict v. Smith, 10 Paige, 130. Bredin v. Dubarry, 14 Serg. & Rawle, 30. Richmond Manufacturing Co. v. Starks, 4 Mason, 296.)
“ On the other hand, the agent may forfeit his right of construing the silence of his principal as an implied acquiescence, by his own neglect in furnishing the latter with requisite information in due time. Parker, C. J. says: ‘ The eases of ratification are, where the agent has gone beyond or besides his authority, for the benefit, as he supposes, of his principal, and gives him immediate notice. In such case, silence is construed acquiescence and ratification. But a delay of intelligence, until an election to approve or disapprove would be attended with no advantage to the principal, defeats the right io construe silence into ratification.’ (Amory v. Hamilton, 17 Mass. Rep. 109.” Dunlap’s ed. of Paley on Agency, 172, n. (q.))

(b) Mr. Justice Story, in commenting upon that class of cases where the question is considered how far a court of equity will retain a suit for the pur-' pose of administering complete justice between the parties, after having acquired cognizance of it for the purpose of discovery, remarks : “ In America, a strong disposition has been shown to follow out a convenient and uniform principle of jurisdiction, and to adhere to that which seems formerly, (as we have seen,) to have received the approbation of Lord Nottingham. (Story’s Eq. Jur. § 65, n. (3.) Id. § 691.) The principle is, that, where the jurisdiction once attaches for discovery, and the discovery is actually obtained, the court will farther entertain the bill for relief, if the plaintiff prays it. This has been broadly asserted in many cases, and certainly possesses the recommendation of simplicity and uniformity of application ; and escapes from what seems to be the capricious and unintelligible line of demarcation, pointed out in the English authorities. Thus, it has been laid down in the courts of New York, upon more than one occasion, as a settled rule, that when the court of chancery has gained jurisdiction of a cause for one purpose, it may retain it generally for relief. (Rathbone v. Warren, 10 Johns. Rep. 587, 596. King v. Baldwin, 17 Johns. Rep. 384. See also Leroy v. Veeder, 1 Johns. Cas. 417. S. C. 2 Caines’ Cas. in Err. 175. Hepburn v. Dundas, 1 Wheat. Rep. 197. Ludlow v. Simond, 2 Caines’ Err. 1, 38, 51, 52.) Asimilar doctrine has been asserted in other states; (Chichester’s Executor v. Vass’ Administrator, 1 Munf, Rep. 98 ; Isham v. Gilbert, 3 Connect. Rep. 166 ; Ferguson v. Waters, 3 Bibb, 303 ; Middletown Bank v. Russ, 3 Conn. Rep. 139 ;) and it has been affirmed in the supreme court of the United States. On one occasion, it was laid down by the last named court, ‘ That if certain facts essential to *432 the merits of a claim purely legal, be exclusively within the knowledge of the party, against whom that claim is asserted, he may be required in a court of chancery to disclose those facts ; and the court, being thus rightly in possession of the cause, will proceed to determine the whole matter in controversy.’ (Russell v. Clarke's Executors, 7 Cranch, 69.)
“ This doctrine, however, though generally true, is not to be deemed of universal application. (Middletown Bank v. Russ, 3 Conn. Rep. 135, 140. Id. 166.) To justify a court of equity in granting relief, as consequent upon discovery, in eases of this sort, it seems necessary, that the relief should be of such a nature, as a court of equity may properly grant in the ordinary exercise of its authority. If, therefore, the proper relief be by an award of damages, which can alone be ascertained by a jury, there may be a strong reason for declining the exercise of the jurisdiction, since it is the appropriate function of a court of law to superintend such trials. And, in many other cases, where a question arises, purely of matters of fact, fit to be tried by a jury, and the relief is dependent upon that question, there is equal reason that the jurisdiction for relief should be altogether declined ; or, at all events, that if the bill is retained, a trial at law should be directed by the court, and relief granted or withheld, according to the final issue of the trial. Thus, if a bill seeks the discovery of a contract for the sale of goods and chattels, or of a wrongful conversion of goods and chattels, and the breach of the contract, or the conversion of the goods and chattels, is properly remediable in damages, to be ascertained by a jury, the relief seems properly to belong to a court of law. In like manner, questions of fraud in obtaining and executing a will of real estate, and many cases of controverted titles to real estate, dependent partly on matters of fact and partly on matters of law, are properly triable in an ejectment, and may well be left to the common tribunals. (Jones v. Jones, 3 Meriv. Rep. 161.) And it has accordingly been laid down in some of the American courts, that, under such circumstances, where the verdict of a jury is necessary to ascertain the extent of the relief, the plaintiff should be left to his action at law after the discovery is obtained. (Lynch v. Sumrall, 1 Marsh Kentucky Rep. 469.)
“ The distinction here pointed out furnishes a clear line for the exercise of equity jurisdiction in cases where relief is sought upon bills of discovery ; and, if it should receive a general sanction in the American courts, it will greatly dimmish the embarrassments which have hitherto attended many investigations of the subject. In the present state of the authorities, however, little more can be absolutely affirmed than these propositions : first, that in bills of discovery seeking relief, if any part of the relief sought be of an equitable nature, the court will retain the bill for complete relief; secondly, that in matters of account, fraud, mistake and accident the jurisdiction for relief will, generally, but not universally, be retained and favored; and thirdly, that in cases where the remedy at law is more appropriate than the remedy in equity, or the verdict of a jury is indispensable to the relief sought, the jurisdiction will either be declined, or if retained, will be so subject to a trial at law.
“From what has been already stated, It is manifest that the jurisdiction in cases of this sort, attaches in equity solely on the .ground of discovery. If therefore, the discovery is not obtained, or it is used as a mere pretence to give jurisdiction, it would be a gross abuse to entertain the suit in equity, when the whole foundation on which it rests is either disproved or it is shown to be a colorable disguise for the purpose of changing the forum of litigation. Hence, to maintain the jurisdiction for relief, as consequent on discovery, it is necessary, in the first place, to allege in the bill that the facts are material to the plaintiff’s case, and that the discovery of them by the defendant is indispensable as proof; for if the facts lie within the knowledge of witnesses, who may be called in a court of law, that furnishes a sufficient reason for a court of equity to refuse its aid. The bill must, therefore allege, (and if required the fact must be established,) that the plaintiff is unable to prove such facts by other testimony. (Gelston v. Hoyt, 1 Johns. Ch. Rep. 543. Seymour v. Seymour, 4 Johns. Ch. Rep. 409. Pryor v. Adams, 1 Call Rep. 382. Duvalls v. Ross, 2 Munf. Rep. 290, 296. Bass v. Bass, 4 H. & Munf. 478.) In the next place, if the answer wholly denies the matters of fact, of which discovery is sought by the bill, the latter must be dismissed; for the jurisdiction substantially fails by such a denial.’ (Russell v. Clark’s Executors, 7 Cranch, 69. Ferguson v. Waters, 3 Bibb’s Rep. 303. Nourse v. Gregory, 3 Litt. 378. Robinsons. Gilbraith, 4 Bibb’s Rep. 184.” 1 Story’s Comm, on Eq. Jur. ed. 1846, §§ 71,’ 72, 73, 74.)