## WHITE *v*. MILLER.

**PRINCIPAL AND SURETY.**—*Payment.*—A surety may, without the request of his principal, pay the debt of his principal before its maturity, and after but not before maturity sue his principal for the money thus paid.

**SAME.**—A surety, by delivering his own note with security to the holder of the note of his principal and receiving the latter note, does not thereby make such payment or satisfaction as to enable him to sue his principal for money paid.

**SAME.**—A surety who gives his own note with security in lieu of the note of his principal cannot sue his principal for money paid until he has paid his own note so held, where it does not appear that the holder of the note of the principal agreed to receive the note of the surety in payment or discharge of the original note.

**SAME.**—*Interest.*—A surety on a note who has given his own note with security in lieu of the note of his principal, and afterward paid his own note, may recover of his principal the rate of interest mentioned in the original note, to the time when he paid his own note.

**PLEADING.**—*Costs.*—*Counter-Claim.*—An answer in bar of costs only, under section 60 of the code (2 G. & H. 92), must show that the claim sued on arose out of or was connected with the cause of action, and could have been used as a counter-claim in the former action.

From the Decatur Common Pleas.

*J. Gavin* and *J. D. Miller*, for appellant.

*B. W. Wilson* and *J. L. Bracken*, for appellee.

DOWNEY, J.—The complaint in this action, which was by the appellee against the appellant, alleges that the plaintiff and the defendant executed a note, on the 14th day of January, 1869, to one Goff, for the sum of eight hundred dollars, payable in one year after date, with eight per cent. interest, the appellee executing the note as the surety of the appellant; that afterward, on the 14th day of January, 1870, the appellee paid off and satisfied the note.

A copy of the note is filed with and made part of the complaint.

The appellant answered in several paragraphs. The first paragraph was a general denial. The second alleged, that the plaintiff, on the 15th day of December, 1869, before the

maturity of the note, without the knowledge or consent of the defendant, and against his known desire, paid off and discharged the said note, the defendant being then and there solvent and abundantly able to pay the note.     The third states, that he admits the making of the note, and that the plaintiff was his surety, and alleges that it was given for money loaned to the defendant; that shortly after the execution of the same, it was transferred to one Jones; that Jones had the money to loan for a number of years thereafter and that the defendant had (for a valuable consideration) made arrangements with Jones to become the borrower of said money for a second year, and had his promise to loan the same to the defendant at said rate of interest as long as he wanted to borrow of him; that afterward, on the 18th day of October, 1869, the defendant loaned the plaintiff the sum of one thousand three hundred dollars until the 1st day of January, 1870; that afterward, on the 15th day of December, 1869, the plaintiff, without right and against the known desire of the defendant, with a full knowledge of all said facts, and with the intent to cheat and defraud the defendant out of his right and privilege of becoming the borrower of said sum of eight hundred dollars for said second year, and of his prospect of having the use of said money for a number of years thereafter, and to procure an offset to the defendant's claim against him for thirteen hundred dollars, due on the 1st day of January, 1870, and to make himself the creditor of the defendant, did, on said 15th day of December, 1869, and before the maturity of said note, and while the defendant was abundantly able either to pay or secure said note, all of which was well known to the said plaintiff at the time, falsely and fraudulently represent to said Jones, the holder of the note, that the defendant did not any longer wish to borrow said money, having obtained from other sources all he needed, and that it was the defendant's wish that the said plaintiff should become the favored borrower of said sum; that thereupon the holder of the note, being ignorant of the said facts, and relying upon such false and fraudulent state-

ments of the plaintiff, did on said day deliver over to said plaintiff the note mentioned in the complaint, and receive from him the plaintiff's note, with surety ; and thereupon said plaintiff did, by the use of said fraudulent device and practice, become the borrower of said money, and the holder of the note mentioned in the complaint; that the current rate of interest at said time and place, and ever since, has been ten per cent. per annum, and that the defendant was by said means compelled to and did borrow, after great trouble and difficulty, a sum of money in lieu thereof, for which he was compelled to pay, and now is paying, interest at the rate of ten per cent. per annum ; that the payment by the plaintiff as aforesaid of said note was not necessary for his (plaintiff's) safety ; wherefore the defendant says that the said payment was the voluntary payment of the plaintiff, and without any compulsion or obligation on his part, etc.

The fourth paragraph alleges, that on the 1st day of April, 1870, after the payment of said note, the defendant obtained judgment in the Marion Common Pleas, against the plaintiff, for the sum of one thousand and forty-seven dollars and twelve and one-half cents, in which action the defendant was personally served with process, and appeared to the action, a transcript of which is filed herewith, and made part of the paragraph ; that the claim of the plaintiff had at said time fully matured, and was a legitimate subject of counter-claim in said action ; all of which was known at the time to the plaintiff. This paragraph is pleaded in bar of costs only.

The fifth paragraph was an answer of payment. There was no sixth.

The seventh paragraph assumes the form of a cross complaint, sets up the same facts contained in the third paragraph, and claims damages in the sum of fifty dollars for expense and trouble in prosecuting suits against the plaintiff for said sum of thirteen hundred dollars, for loss of ten days' time in finding money to replace said sum of eight

hundred dollars, and for two per cent. interest above said rate, at which he was borrowing of said Jones, for two years ; which amount he alleges is due and unpaid, and for which he demands judgment.

The plaintiff demurred to each paragraph of the answer, for the reason that neither stated facts sufficient to constitute a defence to the complaint, nor to entitle the defendant to other relief claimed.

This demurrer was sustained to the second, third, fourth, and seventh paragraphs of the answer, and overruled as to the others. The defendant excepted.

The issues were closed by a reply in denial of the paragraphs of the answer which were held to be good.

The cause was then tried by the court, without the intervention of a jury, and there was a finding for the plaintiff, a motion made by the defendant for a new trial overruled, and judgment rendered on the finding.

The first, second, third, and fourth assignments of error allege, that the court improperly sustained the demurrer to the second, third, fourth, and seventh paragraphs of the answer.

The fifth is, that the court erred in overruling the motion for a new trial.

We will refer to these alleged errors in their order.

The second paragraph of the answer alleges, that the plaintiff " paid off and discharged the note," which had been executed to Goff on the 15th day of December, 1869, before it was due. We think we must hold that this allegation shows a payment and satisfaction of the note at that date, whatever may be the conclusion as to the law which may follow. When the surety pays the debt of his principal after its maturity, whether a suit has been commenced for its collection or not, he may unquestionably have his action to recover the amount which he has so paid from his principal. Mr. Burge, in his work on Suretyship, page 359, says: "As soon as the principal has made default in the fulfilment of the obligation, for the fulfilment of which the surety under-

took, the latter may discharge the obligation, and relieve himself of his liability. If the obligation for which the surety engaged, was the payment by the principal of a sum of money and the money is due to the creditor under the obligation or contract, the surety may pay the creditor the money due to him, even though he did not pay the debt by the desire of the creditor, the authority or consent of the principal to the payment is proved by the joint obligation of himself and surety to the creditor."

"The surety is permitted to recover by an action of *assumpsit* against the principal, the money so paid by him, upon the ground that as there is no express stipulation between the parties there is a promise implied by law on the part of the principal to reimburse him the money so paid by him for the principal; but if the surety take from his principal any security upon which he may proceed for the recovery of the money paid by him, he must resort to the remedy adapted to the security which he has taken and cannot maintain an action of *assumpsit*," etc. Burge Suretyship, 360.

The material question here is, can the surety voluntarily, and without the request of his principal, pay off and discharge the debt of his principal, before it has matured, and, after the lapse of the time which the obligation had to run, sue the principal for the money thus paid? The case of *Jackson* v. *Adamson*, 7 Blackf. 597, justifies an affirmative answer to this question. This is elsewhere decided to be the law. *Armstrong* v. *Gilchrist*, 2 Johns. Cas. 424, and *Craig* v. *Craig*, 5 Rawle, 91. But clearly the principal cannot be made to pay the debt until it has matured.

The third paragraph of the answer stands on different ground. The payment of the note by the surety before its maturity is not shown. It is simply alleged in that paragraph, that Jones "did deliver over to the plaintiff the note mentioned in the complaint, and receive from him the plaintiff's note, with security." This does not show such a payment or satisfaction of the note as would enable the surety

to sue for money paid. *Pitzer* v. *Harmon*, 8 Blackf. 112; *Stevens* v. *Anderson*, 30 Ind. 391. The giving of security for the payment of the substituted note does not change the rule. *Bennett* v. *Buchanan*, 3 Ind. 47.

If we are right in this view, then the note of White, the principal, was not paid before its maturity; and, conceding the position of the appellant to be legally correct, this paragraph of the answer was properly held bad.

The fourth paragraph of the answer does not show that the claim now sued upon could have been used as a counter-claim in the action by the defendant against the plaintiff, referred to in the paragraph. It is not shown that it arose out of or was connected with the cause of action in that case. Section 60 of the code, with reference to costs in such cases, is not applicable.

The seventh paragraph is defective, we think, for the reason mentioned in passing upon the third paragraph. It is doubtful, also, whether either this or the third paragraph sufficiently shows that the defendant had any valid arrangement with Jones for a further loan of the money mentioned in the note held by Jones.

The remaining questions grow out of the overruling of the motion for a new trial. It was urged in the motion that the finding of the court was contrary to the law, was not supported by the evidence, and was excessive in amount.

The note to Goff, on which Miller was surety for White, was put in evidence, the suretyship was proved, and it was proved that Miller had paid the note, by first giving his own note, and afterward paying that note off. These were the essential facts of the plaintiff's case. As to the amount of the judgment, it is claimed that it is too large by about twenty dollars. This excess is found by computing interest at six per cent. on the amount paid by the plaintiff. We think, however, that as there was no actual payment of the note so as to authorize the plaintiff to sue until he discharged the note which he gave to Goff in lieu of the note of White and himself, he could recover the rate of interest men-

tioned in the original note, until the debt was actually discharged. It does not appear from the evidence that Goff agreed to receive the note of Miller in payment and discharge of the original note.

The judgment is affirmed, with costs.