Nixon v. Beard.

Filed May 24, 1887.

———◆———

No. 12,472.

## NIXON *v.* BEARD.

PROMISSORY NOTE.—*Payment.—Rights of Surety.*—A surety in a promissory note has the right to require payment of the note to be enforced when it becomes due; or he may, without compulsion, pay and take it up and immediately institute such proceedings as are necessary for his reimbursement.

SAME.—*Agreement of Third Person to Protect Surety.*—An agreement "to secure and protect (at any time payment must be made)" another in the settlement of a described promissory note, upon which the latter is surety, binds the promisor to take such measures as are necessary for the protection of the surety, whenever payment of the note, after its maturity, may be required, either by the payee or the surety.

SAME.—*Consideration of Contract.—Averment of in Complaint.—Plea of Want of.*—Where the consideration of a contract sued on is properly and fully averred in the complaint, a general denial puts the plaintiff to the proof thereof, and it is not error to sustain a demurrer to a paragraph of answer specifically pleading a want of consideration.

PAYMENT.—*Giving Negotiable Note for Precedent Debt.*—The giving of a negotiable promissory note, governed by the law merchant, for a precedent debt, will operate as a payment and discharge of such debt, unless it be shown that the parties did not intend that the transaction should have that effect.

WITNESS.—*Recalling.—Discretion of Trial Court.—Practice.*—The recalling

of a witness, after he has been examined and discharged, rests in the sound discretion of the trial court. Neither party can recall him for further examination as a matter of right. The proper practice is to first obtain leave of the court.

From the Henry Circuit Court.

*J. H. Mellett, E. H. Bundy* and *W. O. Barnard,* for appellant.

*C. H. Burchenal, J. L. Rupe* and *J. M. Morris,* for appellee.

NIBLACK, J.—Action by William H. Beard against Robert M. Nixon, upon a contract in writing having the nature of a guaranty for the payment of money.

The complaint was in four paragraphs, all of which were held to be sufficient upon demurrer.

The defendant answered in four paragraphs. Demurrers were sustained to the second and fourth paragraphs, and, upon issues joined and a trial, the plaintiff obtained a verdict and judgment on the first paragraph of the complaint. That paragraph of the complaint charged that, on the 4th day of October, 1884, the firm of E. Pleas & Co., as principals, and the plaintiff, as surety, executed a promissory note payable to the First National Bank of New Castle, in this State, ninety days after date, for the sum of $3,083.00, at eight per cent. interest from date; that, on the 17th day of December, 1884, the said firm of E. Pleas & Co., being in embarrassed and failing circumstances, proposed to convey, assign and mortgage all its property, consisting of chattels only, to the plaintiff and defendant, to secure and indemnify the plaintiff against any loss which he might sustain by reason of his having become surety for said firm as stated, and to secure and indemnify the defendant against all loss which he might otherwise sustain on account of certain debts due him from said firm. Whereupon, at the special instance and request of the defendant, it was agreed between the plaintiff and defendant, and said firm, that said firm shóuld convey, assign and mortgage all of its property to the defendant alone; that, in consideration thereof, the defendant should assume

Nixon v. Beard.

.and pay the note herein above described, and should secure and save the plaintiff harmless against all loss on account of his suretyship on said note; that thereupon, in pursuance of said agreement, the said firm of ·E. Pleas & Co. executed and delivered to the defendant a chattel mortgage conveying to him all its property for the purposes stated; that the defendant accepted said mortgage and caused the same to be properly recorded in due time; that afterwards the defendant, by virtue of said mortgage, obtained possession of said mortgaged property and converted the same to his own use; that, in consideration of the execution of said mortgage to him, the defendant promised the plaintiff, by an instrument in writing, a copy of which was .therewith filed, to assume and pay said note, and to secure and protect him, the plaintiff, from all loss on account of said note, whenever payment thereof must be made; that, when said note became due and payment thereof was demanded, the defendant failed and refused to pay the same, but suffered the plaintiff to be sued thereon and judgment to be taken against him on said note for the sum of $3,323.57, with costs of suit, of all which the defendant had due notice; that the plaintiff was compelled to pay, and did pay, said judgment; that said firm of E. Pleas & Co. was at the time of the execution of said mortgage, and has ever since continued to be, wholly insolvent.

The copy of the instrument in writing sued on was as follows:

"NEW CASTLE, IND., December 7th, 1884.

"I hereby agree to secure and protect (at any time payment must be made) W. H. Beard in the settlement of the following described note: Amount $3,083, dated October 4th, 1884, payable to the First National Bank, New Castle, Ind., ninety days after date, bearing 8 % int. from date, and waiving valuation and appraisement laws, and signed by E. Pleas & Co. and W. H. Beard as security.

"R. M. NIXON."

It is insisted that this instrument in writing did not constitute an unconditional promise to pay the note therein described, but amounted only to a contract to pay the same whenever payment should be demanded by the bank, and such payment should become necessary to protect Beard against his liability on account of the failure of E. Pleas & Co. to take up the note, and that hence the paragraph of the complaint, substantially set forth as above, was materially defective for its failure to aver that the bank had demanded payment of the note, and that payment had, in consequence, become necessary when Beard paid the judgment which had been rendered upon the note.   We feel constrained, nevertheless, to give the instrument under consideration a more liberal construction.   Beard had the right under the law of requiring payment of the note to be enforced when it became due.   R. S. 1881, section 1210; *McCoy* v. *Lockwood*, 71 Ind. 319; *Cochran* v. *Orr*, 94 Ind. 433.

A surety on a note has also the right, without compulsion, to pay and take up the note whenever it becomes payable, and to immediately institute such proceedings as are necessary for his reimbursement.   Brandt Suretyship, sections 257, 258; *White* v. *Miller*, 47 Ind. 385; *Hogshead* v. *Williams*, 55 Ind. 145.

Delay is often hazardous to the interests of a surety, and hence the law accords to him the right to proceed promptly for his own protection when his liability accrues.   Considered, therefore, with reference to the rights of Beard as a surety, we construe the instrument in question as having obligated Nixon to take such measures as were necessary for the former's security and protection whenever the payment of the note, after its maturity, might be required either by the bank or Beard, and, with this construction in view, we regard the demurrer to the first paragraph of the complaint as having been correctly overruled.   Brandt Suretyship, sections 88, 89.

The second paragraph of the answer set up a want of con-

sideration for the execution of the written instrument sued on, and error is assigned upon the decision of the court sustaining a demurrer to that paragraph, upon the ground that under our present civil code a want of consideration, when relied on, must be specially pleaded. It is true that, to make a want of consideration a defence to an action on an instrument in writing which imports a consideration, it must be specially pleaded, but that rule does not apply to cases like this in which the consideration is properly and fully averred in the complaint. *Butler* v. *Edgerton*, 15 Ind. 15. In such a case, the general denial puts the plaintiff to the proof of the consideration substantially as alleged.

Error is also assigned upon the sustaining of a demurrer to the fourth paragraph of the answer. That paragraph averred that the plaintiff, Beard, after the note became due, served a written notice on the bank, requiring it to sue thereon; that he, Beard, employed an attorney to bring suit against himself on the note; that the bank did not demand that payment "must be made;" that, consequently, Beard paid the note voluntarily and without request; that, for these reasons, there was no breach of the contract in suit on Nixon's part.

What we have said touching the sufficiency of the first paragraph of the complaint necessarily leads us to hold that this paragraph was insufficient as a defence.

It came out in the evidence that Beard did not pay money when he took up the note against which Nixon had agreed to secure and protect him, but, instead, executed to the bank a note of his own, negotiable by the law merchant, and the point is made that the execution of such a note was not a payment in that sense which enabled him to proceed against Nixon for his indemnification and reimbursement. But the contrary is the well established law of this State.

It was held in the case of *Alford* v. *Baker*, 53 Ind. 279, that the giving of a negotiable promissory note, governed by the law merchant, for a precedent debt, will operate as a

payment and discharge of such precedent debt, unless it be shown that the parties did not intend that the transaction should have that effect; and the doctrine of that case in that respect has been followed and approved in many more recent cases. R. S. 1881, section 5506. A different rule is recognized only as to promissory notes not governed by the law merchant.

One John W. Griffin was called and examined as a witness by the plaintiff, and was then cross-examined by the defendant and discharged. At a later period in the trial he was recalled by the defendant for further cross-examination, and the following question was propounded to him:

"Do you believe in the Christian religion or in the existence of a Supreme Being?"

The plaintiff objected to this question upon the ground that the defendant had no right to recall the witness under the circumstances as stated. The court, without ruling upon the objection thus made, remarked: "I am willing to rule that the witness can not be asked as to his religious belief." Whereupon the defendant proposed to prove, in answer to the question propounded as above, that the witness did not believe either in the Christian religion or in the existence of a Supreme Being, but the court sustained the objection interposed by the plaintiff to the question, to which an exception was reserved.

It is claimed that, under sections 505 and 506, R. S. 1881, the question propounded to the witness, Griffin, was a proper question as affecting his credibility, and that on that account the court erred in refusing to permit the question to be answered. But our construction of the proceedings in connection with the question so propounded does not support that claim. The recalling of a witness, after he has been examined and discharged, rests in the sound discretion of the court, and, therefore, neither party can recall a witness for further examination as a matter of right. The proper practice is to ask and obtain leave of the court before at-

tempting to recall a witness. The inference from the record before us is that the defendant below did not first obtain leave to recall Griffin for further cross-examination, and the objection urged to the question addressed to the latter was based upon the implied assumption that, in the absence of such leave, the defendant had no right to address a question of any kind to Griffin as a witness in the cause. It was the objection thus urged which the court finally sustained, and hence the record does not present the question of the right of the party to ask a witness, on his cross-examination, concerning his opinions as to the truth of the Christian religion or the existence of a Supreme Being. What the court intimated on that subject did not, under the circumstances attending what was said at the time, amount to a formal ruling upon it.

The judgment is affirmed, with costs.

