[Civil No. 1093.   Filed March 20, 1909.]

[100 Pac. 816.]

## A. SANDOVAL and P. SANDOVAL, Defendant and Appellants, v. THE UNITED STATES FIDELITY AND GUARANTY COMPANY, a Corporation, Plaintiffs and Appellee.

1. APPEAL AND ERROR—APPEAL BOND—ACTIONS BY SURETY—PLEADING. In an action by a surety on an appeal bond to recover the amount of the judgment paid by it, an allegation that "said defendants, on the twenty-fourth day of June, 1908, had wholly failed to pay the said judgment, . . . and upon said date said sum was due and owing upon said judgment," is a sufficient allegation that the defendants had not paid the judgment when it was paid by the surety, and a further allegation that "this plaintiff has demanded of the said defendants that they reimburse this plaintiff in the said several sums paid out as aforesaid, and that the defendants have refused to reimburse the plaintiff in said sum, or any part .thereof," sufficiently alleges the nonpayment by defendants to the surety of the amounts paid out by it to withstand a general demurrer.

2. SAME—SAME—TIME FOR FILING BONDS.—United States Revised Statutes, section 1007 (U. S. Comp. Stats. 1901, p. 714), provides that, to stay process on the judgment, appellant may give security required by law, within sixty days after the rendition of the judgment. Section 1012 (page 716) makes courts subject to the same rules prescribed by section 1007, and by section 1909 it is provided that appeals from final decisions of the supreme court of Arizona shall be allowed to the supreme court of the United States, in the same manner, and under the same regulations, as from circuit courts of the United States. *Held,* that appellants from a decision in the supreme court of Arizona have sixty days after the judgment was rendered, exclusive of Sundays, to give security and suspend judgment upon an appeal to the supreme court of the United States.

3. SAME—LIABILITIES ON BONDS—EXECUTION ON JUDGMENT.—It is not necessary, in order to charge the sureties on an appeal bond, to issue execution on the judgment recovered in the appellate court; but, upon affirmance of the judgment of the lower court, the surety becomes liable to the same extent as the principal obligor.

4. PRINCIPAL AND SURETY — TIME OF PAYMENT BY SURETY.—A surety may pay an obligation, and proceed against his principal or cosureties for indemnity for repayment, as soon as his principal is in default, and without waiting .to be sued.

5. APPEAL AND ERROR—LIABILITIES ON BONDS—PAYMENT BEFORE FILING MANDATE OF APPELLATE COURT.—A surety on an appeal bond may

recover from his principal the amount which he pays on the judgment, on its being affirmed in the supreme court, although such payment was made before the mandate of the supreme court was sent to the district court.

6. PRINCIPAL AND SURETY — REMEDIES OF SURETY — ACTION AGAINST PRINCIPAL.—Upon payment by a surety, he may sue the principal upon any agreement of reimbursement which he may have, or he may sue upon the implied promise which the law raises in his favor; or, if his payment is made in satisfaction of a judgment, he may be subrogated to the rights of the creditor, under Civil Code of 1901, paragraph 3555, providing that when any surety pays any judgment, or a part thereof, the said judgment shall not be discharged, but shall remain in force for the use of such surety.

7. SAME—SURETY COMPANIES—REGULATION OF—REVOCATION OF LICENSE. Civil Code of 1901, chapter 1, title 8, paragraph 418, provides that if any surety company shall neglect or refuse to pay any final judgment rendered against it upon any recognizance, stipulation, bond, or undertaking made or guaranteed by it, from which no appeal has been taken, for thirty days from the rendition of such judgment, it shall forfeit all right to do business under this act. *Held,* that the governor has no authority to revoke the license issued to a surety company on its failure to pay any judgment within thirty days.

8. SAME—REMEDIES OF SURETY—AMOUNT OF RECOVERY.—The measure of recovery by a surety against his principal, so far as the amount paid to the judgment creditor of the principal is concerned, is the same whether the action is brought on the implied promise of the principal to repay, or upon an express contract of the principal to reimburse the surety any loss it may sustain by reason of having executed the bond, and in either case he is entitled only to reimbursement.

9. SAME—SAME—SAME.—Plaintiff became surety on defendants' appeal to the territorial supreme court. The judgment was affirmed, and defendants appealed to the United States supreme court. After the appeal was taken to the United States supreme court, plaintiff paid the judgment, and took a bond from the appellee for the repayment of the amount so paid if the judgment appealed from should be reversed in the United States supreme court. *Held,* that before the decision of the case on appeal by the United States supreme court, plaintiff could not recover from defendants the amount of the judgment, but could only recover the amount reasonably expended in connection with the adjustment of the matter for which no security was received by plaintiff.

APPEAL from a judgment of the District Court of the Second Judicial District, in and for county of Cochise. Fletcher M. Doan, Judge. Modified and affirmed.

Appeal to supreme court of United States.

The facts are stated in the opinion.

Lawler, Allen, Van Dyke & Jutten, Fred W. Morrison, and G. P. Bullard, for Appellants.

The complaint fails to allege that the amount sued for in this case was unpaid by defendants to plaintiff at the time of the commencement of this action, and this is a necessary allegation where suit is brought upon an express contract for the payment of money. *Frisch* v. *Caler,* 21 Cal. 72; *Scroufe* v. *Clay,* 71 Cal. 123, 11 Pac. 882; *Hurley* v. *Ryan,* 119 Cal. 71, 51 Pac. 20; 9 Cyc. 730, and cases cited.

Eugene S. Ives, and S. L. Pattee, for Appellee.

"The averment that defendant has neglected and refused to pay, etc., we think is sufficient." *Rankin* v. *Sisters of Mercy,* 82 Cal. 88, 22 Pac. 1134. The provision in the application and agreement for the bond is that the appellants agreed to reimburse appellee. The allegation in the complaint is that appellee demanded such reimbursement, and the appellants refused. "The breach, therefore, on his part consists in his failure or refusal to pay for the work done or agreed to be done." *McPherson* v. *Hattich,* 10 Ariz. 104, 85 Pac. 732.

CAMPBELL, J.—The complaint alleges that in April, 1907, one Epes Randolph recovered a judgment in the district court of Santa Cruz county, against the defendants in this action, A. Sandoval and P. Sandoval, for the sum of $10,528.33; that the defendants appealed from the judgment to this court, and applied to the United States Fidelity and Guaranty Company, a corporation (hereinafter referred to as the Guaranty company), for a bond to be given on appeal to stay the judgment; that in the application for the bond the defendants covenanted "to reimburse said company for any and all loss, costs, charges, suits, damages, counsel fees, and expenses of whatever kind or nature which said company shall or may for any cause at any time sustain or incur or be put to for or by reason or in consequence of said company having entered into or executed said bond"; that in consideration of the

agreement the Guaranty company agreed to and did execute
the bond on appeal, in a sum double the amount of the
judgment and costs; that the judgment of the court below
was affirmed by this court on or about March 27, 1908, and
judgment rendered against the defendants, and against the
Guaranty company, for the amount recovered in the lower
court, together with interest and costs; that a motion for
rehearing was filed and denied on or about the 16th of May,
1908; that thereafter, and prior to the twenty-fourth day
of June, 1908, the plaintiff received notice from the governor
of the Territory of Arizona to the effect that the judgment
of the supreme court of the Territory of Arizona had not been
paid; that more than thirty days had elapsed from the
rendition of the judgment, and to the effect that, unless the
judgment was paid, or sufficient excuse for the nonpayment
thereof shown, the company would forfeit its rights to trans-
act business as a surety company in the Territory of Arizona;
that plaintiff promptly notified the defendants of said notice
having been received by them from the governor, and that
defendants, on the twenty-fourth day of June, 1908, had
wholly failed to pay the said judgment or to appeal there-
from to the supreme court of the United States, and that on
the twenty-fourth day of June, 1908, plaintiff paid Randolph,
in satisfaction of the judgment and interest, the sum of
$11,484.95, and that upon said date said sum was due and
owing upon the said judgment; that the plaintiff has paid,
for charges and expenses, by reason and in consequence of
having entered into and executed the bond, the sum of
$676.75; that the plaintiff has demanded of the defendants
that they reimburse it in the said several sums paid out, and
that the defendants have refused to reimburse the plaintiff
in said sum, or any part thereof; that in order to collect the
said sum from the defendants, it has become necessary for the
plaintiff to employ counsel to bring and institute this action,
and plaintiff has agreed to pay said counsel a reasonable fee
and charge for the institution and prosecution of this suit, and
as plaintiff is informed and believes, the reasonable cost of
the institution and prosecution of this suit will be the sum
of $3,000, be the same more or less. Judgment was demanded
in the sum of $13,911.70, together with interest. The defend-
ants demurred to the complaint, on the ground that it does

not state a cause of action, and by way of answer admit the facts set forth as to the judgment having been rendered, the application for, and the execution of, the bond, the appeal, the affirmance of the judgment by this court, and the denial of the motion for a rehearing, deny that the plaintiff received the notice from the governor of the Territory, as alleged, and also deny that the plaintiff paid to Randolph for the defendants, in satisfaction of the judgment, any sum of money, or that any sum of money was due upon the said judgment, and allege that after the judgment was affirmed in this court, and the motion for rehearing denied, a notice of appeal was duly given to the supreme court of the United States; that said cause was thereafter transferred to the supreme court of the United States, and is now pending in said court; that no execution has ever been issued upon said judgment, and that, if the plaintiff in this case has ever paid the amount of said judgment, it has done so by reason of its own negligence, voluntarily, and not at the request of the defendants, or by any order of the court, or in satisfaction of any judgment    The cause was tried to the court without a jury, and resulted in a judgment for $14,683.25 and costs, in favor of the Guaranty company. From this judgment, and from an order refusing a new trial, this appeal is brought.

The testimony shows that on March 27, 1908, the judgment of the district court was affirmed in this court, and that pursuant to the provisions of paragraph 1592, Civil Code of 1901, judgment was also entered against the Guaranty company as surety upon the appeal bond. Thereafter, within the time allowed by law, a motion for a rehearing was made, which motion was denied by this court May 19, 1908. The action having been tried before the court without a jury, an appeal to the supreme court of the United States from the judgment of this court was prayed, and was allowed by one of the justices of the court on June 20, 1908. In the order allowing the appeal it was directed that the judgment be stayed upon the appellants filing their supersedeas bond in the sum of $20,000, to be approved by any justice of this court. This order was filed with the clerk June 22, 1908. A bond in proper form was approved by one of the justices on July 14th, and filed with the clerk on July 15, 1908. Citation was issued July 18, 1908, and served on July 31, 1908. It also

appears that on or about June 18th, the judgment creditor, Randolph, demanded of the Guaranty company that it pay the judgment; that on June 24, 1908, the Guaranty company paid the judgment in full, and thereafter, and as a part of the transaction, took from Randolph a bond, with collateral security, for the return of the amount paid him, with interest, should the supreme court of the United States reverse the judgment of this court.

Appellants assign as error the overruling of their demurrer, insisting, first, that the complaint is bad for the reason that it does not show that the Sandovals had not paid the judgment at the time that the Guaranty company paid it. The complaint alleges that "said defendants, on the twenty-fourth day of June, 1908, had wholly failed to pay the said judgment, . . . and upon said date said sum was due and owing upon said judgment," and this, we think, is clearly sufficient.

It is also complained that the complaint fails to allege that the amount sued for in this case was unpaid by the Sandovals to the Guaranty company at the time of the commencement of this action. The allegation of the complaint in this respect is that "this plaintiff has demanded of the said defendants that they reimburse this plaintiff in the said several sums paid out as aforesaid, and that the defendants have refused to reimburse the plaintiff in said sum, or any part thereof." While this allegation might not have been sufficient as against a special demurrer, we do not regard it as an entire failure to state an essential fact, but only a defective statement of the fact of nonpayment, good when tested only by a general demurrer.

In considering the question whether the complaint as an entirety states a cause of action, it will be helpful to notice the statutes of the United States governing appeals from this court to the supreme court of the United States, and the decisions of the supreme court construing them. Section 1007 of the Revised Statutes (U. S. Comp. Stats. 1901, p. 714) provides: "In any case where a writ of error may be a supersedeas, the defendant may obtain such supersedeas by serving the writ of error by lodging a copy thereof for the adverse party in the clerk's office where the record remains, within sixty days, Sundays exclusive, after the rendering of the

judgment complained of, and giving the security required
by law on the issuing of the citation. But if he desires to stay
process on the judgment, he may, having served his writ of
error as aforesaid, give the security required by law within
sixty days after the rendition of such judgment, or after-
ward with the permission of a justice or judge of the appel-
late court. And in such cases where a writ of error may be
a supersedeas execution shall not issue until the expiration
of ten days." By section 1012 (page 716) appeals from the
circuit courts are made subject to the same rules, regulations,
and restrictions as are prescribed for writs of error, and by
section 1909 it is provided that writs of error and appeals
from final decisions of the supreme court of Arizona shall
be allowed to the supreme court of the United States in the
same manner, and under the same regulations, as from cir-
cuit courts of the United States. Therefore, appellants had
sixty days after the judgment was rendered, exclusive of
Sundays, in which they could give security and suspend the
judgment upon their appeal to the supreme court of the
United States. This period of sixty days did not commence
to run until May 19th, the date the rehearing was denied.
*Railroad Co.* v. *Bradley,* 7 Wall. 575, 19 L. Ed. 274; *Kingman*
v. *Western Mfg. Co.,* 170 U. S. 675, 18 Sup. Ct. 786, 42 L.
Ed. 1192. Upon this date the liability of the surety became
fixed. *Gillette* v. *Bullard,* 20 Wall. 571, 22 L. Ed. 387;
*Babbitt* v. *Finn,* 101 U. S. 7, 25 L. Ed. 820. "Execution
cannot issue upon the judgment until the expiration of ten
days, exclusive of Sundays, from the entry thereof. If the
writ of error and bond are filed before the expiration of the
ten days, no execution can issue so long as the case in error
remains undisposed of. After the expiration of the ten
days, an execution may issue. Notwithstanding this, under
the provisions of the act of 1872, upon the filing of the bond
within sixty days from the time of the entry of the judgment
a supersedeas may be obtained. Such a supersedeas, however,
stays proceedings only from the filing of the bond. It pre-
vents further proceeding under an execution which has been
issued, but does not interfere with what has already been
done.' *Bd. of Commrs.* v. *Gorman,* 19 Wall. 661, 22 L. Ed.
226. See, also, *Foster* v. *Kansas,* 112 U. S. 201, 5 Sup. Ct. 8,
97, 28 L. Ed. 629. It is not necessary, in order to charge the

sureties in an appeal bond, that an execution on the judgment recovered in the appellate court should be issued against the principal. Upon affirmance, the surety becomes liable to the same extent as the principal obligor. *Babbitt* v. *Finn, supra.*

The supersedeas bond was not filed until July 15, 1908, and therefore the Guaranty company was liable to execution upon the judgment at any time between May 31st and July 15th. Being thus liable, had it a right to pay the judgment, or did it owe a duty to its principals to withhold payment during the period within which they might exercise the right to suspend the judgment, pending their appeal to a higher court. No case has been brought to our attention in which such a question has been presented. If we look to the general law governing suretyship, we find that a surety who is in law bound to pay an obligation has an undoubted right to pay the same, and proceed against his principals or cosureties for indemnity or repayment. He may do this as soon as his principal is in default, and without waiting for suit to be brought against him. 27 Am. & Eng. Ency. of Law, 472; *May* v. *Ball,* 108 Ky. 180, 56 S. W. 7; *Nixon* v. *Beard,* 111 Ind. 137, 12 N. E. 131; *Martin* v. *Ellerbe's Admr.,* 70 Ala. 326; *Feamster* v. *Withrow,* 12 W. Va. 611. We can see good reason why a surety on an appeal bond should not be held to be justified in paying within the ten days during which no execution can issue; but, his principal not having suspended the judgment within that time, and he being liable to have his property taken upon execution, we perceive no reason why he may not pay the judgment, and thus relieve himself of liability. A payment so made by a surety may work a hardship upon the principal, but we see no way of avoiding it, except by the exercise of diligence in the matter of perfecting an appeal and filing a supersedeas bond. It is suggested by counsel for appellants that the Guaranty company was not coerced to pay by fear of execution, since it does not appear that the mandate of this court had been sent to the district court. We do not see that this in any wise affects the situation. The filing of the mandate in the district court adds nothing to the liability of the surety. · That is fixed by the judgment in this court. It is probably true that the judgment debtor must resort to the district court to obtain execu-

tion; but, when a motion for rehearing is denied, the mandate should go to the district court at once, and if the clerk should delay in forwarding it, a mere suggestion, without notice, would cause it to be sent. Therefore, the refusal of a surety to pay upon demand might almost immediately result in an execution against him being issued. Upon payment being made by a surety he is entitled to claim reimbursement by reason of any agreement of reimbursement which he may have with his principal, or may sue upon the implied promise which the law raises in his favor; or, if he is compelled to make payment in satisfaction of a judgment, he may be subrogated to the rights of the creditor, under the provisions of paragraph 3555, Revised Statutes of 1901. We think the court did not err in overruling the demurrer to the complaint.

The allegation in the complaint, and the testimony offered in support of it, that the governor of the Territory had notified the Guaranty company that the judgment was unpaid, that thirty days had elapsed since its rendition, and that, unless the judgment was paid, or excuse for its nonpayment shown, the company would forfeit its rights to transact business as a surety company in the Territory, has given rise to what we regard as much unnecessary confusion, and assignments of error based upon rulings of the trial court admitting testimony to sustain the allegations have been discussed at length by counsel for appellants. Chapter 1, title 8, Civil Code of 1901, providing for the regulation of surety companies doing business within the Territory, contains the following: "Par. 418. That if any such company shall neglect or refuse to pay any final judgment or decree rendered against it upon any such recognizance, stipulation, bond or undertaking made or guaranteed by it under the provisions of this act, from which no appeal, writ of error, or supersedeas has been taken, for thirty days from the rendition of such judgment or decree, it shall forfeit all right to do business under this act." The act makes no provision for the revocation by the governor of the license issued to a surety company, upon its failure to pay within thirty days, and it is to be observed that at the time when payment was made (if the statute may be held applicable to judgments such as is involved in this case, where the taking of the appeal must depend upon the actions of others, whose rights are governed

by the laws of the United States) the forfeiture had already been incurred. The receipt of the telegram by the Guaranty company may serve to explain the motives of the company in making the payment, but we do not see that it affects the legal relations existing between the parties to this action.

We come now to consider the assignment that upon all of the facts in evidence the court erred in rendering judgment for the Guaranty company. This action is upon the express contract of appellants to reimburse the Guaranty company any loss it may sustain by reason of having executed the appeal bond. The measure of recovery, at least so far as the amount paid to the judgment creditor is concerned, is the same as though brought upon the implied promise raised by the law. As we have seen, a surety, when he becomes legally liable so to do, may pay the obligation, and proceed against his principal to secure reimbursement. But he is entitled to nothing more than reimbursement. "If the surety extinguishes the debt of the principal for any sum less than the full amount thereof, he can, in the absence of express contract, only recover from the principal the amount paid by him, and interest thereon, and costs. The implied contract is that the surety shall be indemnified only, and he will not be allowed to speculate out of his principal. If he pays in depreciated bank notes, or other money which is below par, but is taken by the creditor at par, he can only recover from the principal the par value of such money. If he pays in land, he can only recover the value of the land. He is entitled to recover the amount paid, not the amount extinguished by that payment. . . . If the surety, who compounds a debt for which his principal and himself have become jointly liable, takes an assignment of the debt to a trustee for himself, he can only claim, against his principal, the amount which he has paid. He occupies in that regard the same position as an agent, and cannot speculate out of his principal." Brandt on Suretyship and Guaranty, sec. 212.

The supreme court of California, in *Stone* v. *Hammell*, 83 Cal. 547, 17 Am. St. Rep. 272, 23 Pac. 703, 8 L. R. A. 425, in holding that a surety may not, by satisfying the obligation by giving his own note, recover the amount of the note from his principal before payment thereof, bases its holding upon the ground that the surety might recover the whole amount of

the principal, and never pay his own note, "thus violating the cardinal rule that the surety shall not speculate out of the principal." Lord Cottenham, in *Reed* v. *Norris*, 2 Mylne & C. 361, says: "Now if there had been no authority upon this subject, I should have found very little difficulty in making the precedent for deciding that, under these circumstances, the surety is not entitled to demand more than he has actually paid. I take the case of an agent. Why is an agent precluded from taking the benefit of purchasing a debt which his principal was liable to discharge? Because it is his duty, on behalf of his employer, to settle the debt upon the best terms he can obtain; and, if he is employed for that purpose, and is enabled to procure a settlement of the debt for anything less than the whole amount, it would be a violation of his duty to his employer, or, at least, would hold out a temptation to violate that duty, if he might take an assignment of the debt, and so make himself a creditor of his employer to the full amount of the debt which he was employed to settle. Does not the same duty devolve on a surety? He enters into an obligation and becomes subject to a liability, upon a contract of indemnity. The contract between him and his principal is that the principal shall indemnify him from whatever loss he may sustain by reason of incurring an obligation together with the principal. It is on a contract for indemnity that the surety becomes liable for the debt. It is by virtue of that situation, and because he is under an obligation as between himself and the creditor of his principal, that he is enabled to make the arrangement with that creditor. It is his duty to make the best terms he can for the person in whose behalf he is acting. His contract with the principal is indemnity."

Under the testimony in this case, what loss has the Guaranty company sustained? The payment made by it to Randolph cannot be said to have been an absolute one, but one conditioned that the judgment be affirmed by the supreme court, since it has taken and holds security satisfactory to it for the return of the money with interest, in the event the judgment is reversed. It may not suffer the loss of the amount paid to Randolph. If the judgment in this action is sustained, it will collect the amount from the appellants, and if the supreme court of the United States reverses the judgment

appealed from, it will also be repaid by Randolph. Such a result would manifestly be inequitable. To sanction it would certainly do violence to "the cardinal rule that the surety shall not speculate out of the principal." The Guaranty company, in taking the security, as pointed out by the authorities to which we have called attention, may be said to have acted as the agent of the appellants. It took and still holds the security in its own name, and we do not think that it may claim reimbursement from its principals until its actual loss is ascertained, or at least that it may not recover without surrendering the security to its principals. We, therefore, conclude that the trial court erred in giving judgment for the amount paid to Randolph. However, we think that the Guaranty company may recover in this action such amounts as it reasonably expended in connection with the adjustment of the matter, for which it holds no security. These expenses aggregate $544.50, and upon this amount interest at the rate of six per cent per annum should be allowed from August 3, 1908, to the date of the judgment of the district court.

The judgment of the district court is therefore modified and reduced to the amount indicated, and as so modified, is affirmed, with costs in this court to appellants, but without prejudice to the rights of the Guaranty company to bring such further action as may be necessary to establish its rights, should a right to reimbursement of the amount of the judgment accrue to it.

KENT, C. J., and SLOAN and NAVE, JJ., concur.